In re B & L OIL COMPANY, Debtor.

Garry R. APPEL, Trustee, Plaintiff,

v.

John R. GABLE and Alan Gable Oil Development Company, Defendants.

Bankruptcy No. 82 B 4065 Mc.
Adv. No. 84 G 0174.

United States Bankruptcy Court,
D. Colorado.

July 31, 1984.

Rothgerber, Appel & Powers by Garry R. Appel, Denver, Colo., for plaintiff.

Joel Laufer and Craig E. Wagner, Englewood, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

JAY L. GUECK, Bankruptcy Judge.

THIS MATTER is before the court on defendants' Motion to Dismiss for Improper Venue. At the outset, it is observed that dismissal is inappropriate where the only impediment is improper venue. *In re Herman Cantor Corp.,* 22 B.R. 604 (Bankr.E.D.Va.1982). Therefore, attention will be directed to the question of venue.

The underlying Complaint seeks an order under § 542(a) of the Bankruptcy Code requiring the defendants to turn over to the Trustee certain oil field equipment described in the Complaint. The following facts relating to the Complaint, the Motion for Change of Venue and the debtor's bankruptcy Petition are undisputed:

1. The debtor is a West Virginia corporation, with its principal place of business in West Virginia. The debtor has filed a voluntary Petition under Chapter 11 in the U.S. Bankruptcy Court for the District of Colorado. The basis upon which venue for that Petition is asserted is that B & L Oil Co. is an affiliate of Empire Oil & Gas Co., who has a pending Chapter 11 case in this

**810**

court in Case No. 82 B 3985 Mc. Venue for the underlying bankruptcy action is proper in Colorado under 28 U.S.C. § 1472(2).

2. The plaintiff, Garry R. Appel, is a court appointed Trustee, with authority to operate the business of the debtor, B & L Oil Company.

3. The defendants are residents of the State of West Virginia, and venue under non-bankruptcy provisions would be proper only in West Virginia.

4. The equipment which is the subject of this action is located in West Virginia. The defendants took possession of this equipment in West Virginia after commencement of the Chapter 11 case.

5. The plaintiff is seeking return of the equipment for use in the operation of the business of the debtor.

6. The debtor's principal assets are located in West Virginia.

Although venue with respect to the underlying Chapter 11 case is proper in Colorado, there remains the question of where venue properly lies with respect to proceedings arising under or related to cases under Title 11. The venue provision governing this consideration is set forth in 28 U.S.C. § 1473.[1] Specifically, in this proceeding, venue is controlled by §§ 1473(a) and (d), which provide:

"(a) Except as provided in subsections (b) and (d) of this section, a proceeding arising in or related to a case under title 11 may be commenced in the bankruptcy court in which such case is pending ....

"(d) A trustee may commence a proceeding arising under title 11 or arising in or related to a case under title 11 based on a claim arising after the commencement of such case from the operation of the business of the debtor only in the bankruptcy court for the district where a State or Federal court sits in which, under applicable nonbankruptcy venue provisions, an action on such claim may have been brought."

Thus, pursuant to § 1473(a), venue in this adversary proceeding lies in Colorado

unless § 1473(d) is applicable. Both parties agree that this claim arose after the commencement of the Chapter 11 case and that the limitation contained in subsection (d) will apply if the claim arose "from the operation of the business of the debtor."

Resolution of whether § 1473(d) applies requires a determination of whether the matters herein involved are "administrative matters." If so, they should be resolved in the bankruptcy court where the underlying case is filed. Hse.Rpt. No. 595, 95th Cong. 1st Sess. 446 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787; 1 *Collier on Bankruptcy*, at pp. 3–167. If the "administrative matter" limitation does not apply, additional issues may then be addressed. First, some courts have examined whether the claim arose from the debtor's, versus the Trustee's, operation of the business. A second issue focuses on whether the claim arose from the operation of the business or the administration of the estate.

**I. Administrative Matters**

■ An "administrative matter" is a matter which is so closely tied to the main bankruptcy proceeding that it will be heard only in the court where the bankruptcy petition is pending. *See, In re Powell*, 29 B.R. 346 (Bankr.Colo.1983); 1 *Collier on Bankruptcy*, ¶3.02(e), at p. 3–171 (15th ed. Rel. 6–5/82).

The administrative matter limitation is a judicially-created limitation placed on the venue provisions of § 1473. This limitation is founded on a passage in Hse.Rpt. No. 595, 95th Cong. 1st Sess. (1977) on § 1473 of the Bankruptcy Reform Act. That provision states as follows:

"Subsection (a) of this section [§ 1473] specifies that with two exceptions, enumerated in subsections (b) and (d), the court in which the bankruptcy case is pending is always a proper venue for proceedings arising under title 11 or arising under or related to a case under title 11. Though these venue provisions are phrased in broad terms, with respect to administrative matters in a case they

1. For in-depth discussion of the general concept of venue and the application of § 1473 to various "proceedings", see, *In re Burley*, 11 B.R. 369 (Bankr.C.D.Cal.1981).

generally will not apply. The bankruptcy court in which the case is filed will hear those matters." Hse.Rept. No. 595, *supra,* at p. 446.

The only decision specifically adopting this "administrative matter" limitation is *In re Powell, supra,* which relies upon the House Report and 1 *Collier on Bankruptcy,* ¶3.02(e) for its authority. Unfortunately, neither the House Report nor *Collier* give clear guidance as to what constitutes an "administrative matter." *Collier* states, with respect to this analysis, as follows:

> "What the House Report must have meant by 'administrative matters' are those things which could hardly be characterized as 'civil proceedings' within the intendment of 28 U.S.C. § 1471(b)." 1 *Collier on Bankruptcy,* at p. 3–172 (15th ed. Rel. 6/5/82).[2]

Thus, Collier concludes that although certain issues may be brought in the form of adversary proceedings, if the issues are intimately and inextricably interwoven with the administration of the case, they are "administrative matters", and should be heard only in the district in which the petition is pending. This definition does little to clarify the meaning of "administrative matters." The most useful portion of Collier's analysis is the series of examples of matters which the Collier authors consider to be "administrative." These examples, which are by no means exclusive, include:

Litigation over a discharge;

Whether a Chapter 11 plan should be confirmed;

Contest of an involuntary petition;

Proceedings seeking removal of a trustee;

Contest over fees;

A hearing in which a trustee seeks to borrow monies secured by a lien ahead of existing liens;

Whether a trustee should be appointed in a Chapter 11 case.

A turnover proceeding is not listed as one of those "administrative matters." The decision in *In re Powell, supra,* involved the determination of dischargeability in a Chapter 13 case. Relying upon the discussion in *Collier,* the court determined that dischargeability of a debt should be included as an "administrative matter."

■ Contrary to the result in *Powell,* but utilizing the same analysis, it would appear to me that an action to recover property under § 542 of the Code would not constitute an administrative matter. It is not a matter which directly involves the administration of the case, and it appears the issues involved could be tried without reference to any issues concerning the underlying bankruptcy action.

■ A turnover complaint under § 542 of the Code is an adversary proceeding arising under or arising in Title 11. Thus, it appears to be governed by 28 U.S.C. § 1471(b).

Resolution of the question of whether or not a claim is an administrative matter does not result in a determination that it did or did not arise from operation of the debtor's business for purposes of § 1473(d). A determination of that question requires an analysis of whether the claim arose as a result of operation of the business of the debtor, or arose out of the administration of the estate as opposed to operation of the business.

## II. Application of § 1473(d).

*A. Debtor's versus Trustee's Operation of the Business*

In determining whether a claim arose out of the operation of the debtor's business

---

**2.** 28 U.S.C. § 1471(b) provides that the district courts shall have "original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." Since the decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Judicial Conference of the United States proposed a "rule of reference" which was adopted in all districts. This rule has somehow found its way into many publications in place of 28 U.S.C. § 1471. I have disregarded that rule in this analysis, since it bears no relationship to an Act of Congress nor is it in any way indicative of Congressional intent.

for purposes of § 1473(d), some courts have made a distinction where the business is operated by the debtor as opposed to the trustee.

The first occasion wherein a court, in the context of § 1473(d), made this distinction was *In re G. Weeks Securities I,* 5 B.R. 220 (Bankr.W.D.Tenn.1980). There, the trustees for the debtor in a Chapter 11 proceeding filed a complaint alleging that the defendant had repudiated and breached certain contractual obligations to the debtor. Defendant filed motions to dismiss both for lack of personal jurisdiction and for improper venue. With respect to venue, the defendant contended that § 1473(d) was applicable in that the plaintiff's claim arose out of the debtor's business and after the commencement of the Chapter 11 case. The plaintiff countered that § 1473(d) only applied to actions of a trustee or debtor-in-possession which were not derivative of or based on legal relationships and assets existing at the time the bankruptcy proceeding was filed.

The bankruptcy court determined that any alleged anticipatory repudiation or breach of contract occurred after filing the Chapter 11 petition but before the plaintiffs were appointed co-trustees. Since the cause of action accrued while the debtor was operating the business, the trustee's action was derived from the debtor. Under these circumstances, the court held § 1473(d) to be inapplicable. The court reasoned that this was the only interpretation consistent with Congress' broad jurisdictional grant of authority to the bankruptcy court in which the debtor's Title 11 case was originally commenced.

The bankruptcy court in Tennessee adhered to its decision in another *Weeks* opinion clarifying the earlier one. *In re G. Weeks Securities II.,* 6 B.R. 277 (Bankr.W. D.Tenn.1980).

The bankruptcy court for the Eastern District of Arkansas reached a similar result, citing *In re Weeks I* in *In re Cox Cotton Co.,* 8 B.R. 682 (Bankr.E.D.Ark. 1981). However, the court in *Cox Cotton* did not draw a distinction between cases involving the trustee's versus the debtor's operation of the business. The court simply adopted that portion of the *Weeks* decision which found that the intent of Congress in the 1978 Bankruptcy Code was to vest the bankruptcy courts with the fullest degree of power and breadth of jurisdiction possible, consistent with due process. The court there stated the intent of Congress, as it perceived that intent, as follows:

> "Manifestly, the Congressional intent in the disputed subsection [§ 1473(d)] was to afford protection to those entities who in good faith dealt with the trustee or debtor in possession *after* the order of relief, *and in regards to the administration of the estate.* It is not inapposite to suggest that this provision represents an *incentive* to otherwise reluctant parties to deal with the trustee, not incomparable to incentives offered to such parties in other contexts, *See* 11 U.S.C. § 364." *Cox Cotton, supra,* at 864. (emphasis supplied).

The foregoing decisions appear to represent the movement of bankruptcy courts toward the exercise of broad jurisdiction prior to the Supreme Court's decision in *Northern Pipeline v. Marathon Pipe Line, supra.* Since these opinions, the updated version of *Collier* in 1982 contains a more complete discussion of the legislative purpose underlying § 1473(d). *See,* 1 *Collier on Bankruptcy* ¶3.02(g), p. 3–175 through 178 (15th ed. Rel. 6–5/82). That section states as follows:

> "The legislative purpose which underlies section 1473(d) is that it is intended to limit
>
> 'the trustee's ability to commence a proceeding in the "home court" if the proceeding commenced is based on a claim arising out of the operation of the debtor's business after the commencement of the case.
>
> 'The trustee may commence such a proceeding only in the district in which the debtor could have commenced it under applicable nonbankruptcy venue provisions.'

"The same thought appears in the Senate Report which states:

'Subsection (d) relates to claims in favor of the debtor arising out of the operation of the debtor's business after the commencement of the case. The trustee may commence a proceeding on such a claim only in the judicial district in which the debtor could have sued on the claim in the absence of bankruptcy.' "

■ I agree with the recent pronouncements of *Collier* as to the legislative purpose underlying § 1473(d). Based upon this analysis, together with the clear language of § 1473(d), it is my determination that the exceptions provided in that section are applicable to any related proceeding commenced by a Trustee based on a claim arising after the commencement of a case under Title 11 and which arises from the operation of the business of the debtor, whether that operation is by the debtor or the Trustee. Under these circumstances, it is the debtor's residence, not the Trustee's, which will determine the proper venue for purposes of that section. As stated in *Collier*: "Whatever one may think of the philosophy which leads to such a result, nevertheless one should give as much credence as one can to the legislative history." 1 *Collier, supra*, at p. 3–177.

### B. "Operation of Business" or "Administration of the Estate"

The next inquiry is whether the action arises from actual operation of the business, or from administering the estate. In this connection, administration of an estate can and does involve more than the previously discussed "administrative matters." However, there is a dearth of authority setting forth any meaningful distinction in the context of § 1473(d).

A number of cases have analyzed activities of the Trustee under 28 U.S.C. § 959(a). This section allows court appointed Trustees to be sued without leave of the court appointing them "with respect to any of their acts or transactions in carrying on business connected with such property." 28 U.S.C. § 959(a). This language is similar to that of § 1473(d). However, it should be noted that § 959(a) pertains to suits against the Trustee, while § 1473(d) applies to suits brought by the Trustee.

The following is a brief synopsis of cases in which the activities of the Trustee were considered to be "carrying on business" and the Trustee was allowed to be sued without leave of court: *In re York*, 13 B.R. 757 (Bankr. Maine 1981) [injury resulting from Chapter 13 debtor's negligent operation of a motor vehicle which was property of the estate was held to have occurred while "carrying on business"]; *Matter of Canarico Quarries, Inc.*, 466 F.Supp. 1333 (Puerto Rico 1979) [Trustee's post-petition operation of quarries was "carrying on business" requiring a state permit]; *Matter of Investors Funding Corp. of New York*, 547 F.2d 13 (2nd Cir.1976) [Trustee's failure to make a timely payment on a mortgage was a routine business activity of the debtor, constituting "carrying on business"].

The following cases were determined not to constitute "carrying on business": *In re Rhea*, 17 B.R. 789 (Bankr.W.D.Okl.1982) [Trustee's liquidation sale was not the "conduct of business" for purposes of levying a sales tax against the proceeds]; *In re American Assoc. Systems, Inc.*, 373 F.Supp. 977 (E.D.Ky.1974) [Trustee's suit to collect pre-petition debt was not "carrying on business"]; *Fidelity Mortgage Investors v. Camillia Bldrs.*, 550 F.2d 47 (2nd Cir.1976), *cert. den.* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977) [attempt to commence a foreclosure of mechanic's lien filed pre-petition was not a routine occurrence arising from continued operation of the business, but was an effort by the creditor to enhance its position and attempt to collect and liquidate assets]; *Matter of Campbell*, 13 B.R. 974 (Bankr. Idaho 1981) [suit could not be maintained against the Trustee who allegedly personally guaranteed payment of services provided in storage and preservation of assets of the estate].

The decision in *Campbell, supra*, is based on a line of authority beginning with

*Austrian v. Williams,* 216 F.2d 278 (2nd Cir.1954). The *Austrian* line of authority holds that merely collecting and taking steps to preserve and/or hold assets, as well as other aspects of administering and liquidating an estate, do not constitute "carrying on business." The decisions do not address the issue of whether collection of assets for use in the business is "carrying on business."

In my view, this is a significant distinction. If the Trustee collects assets for liquidation, that does not constitute "carrying on business" under § 959. Rather, such activity is in connection with liquidation of the estate. However, where assets are collected for purposes of being utilized in a continued operation of the business, this constitutes a part of efforts to continue to carry on the business of the debtor. As such, in the context of venue, it should be subject to the provisions of § 1473(d).

The activity here involves a complaint by the plaintiff Trustee to obtain the turnover of property to be used in the operation of the business of the debtor. Paragraph 6 of the Complaint notes as follows: "It is necessary for the Trustee to have the use of such drilling rigs in order to preserve the assets of this bankruptcy estate and operate the debtor's business." Paragraph 7 states: "It is necessary that the Trustee obtain the return of this equipment for the continued operation of the leases and wells owned by B & L." Paragraph 10 of the Complaint notes that there are insufficient funds in the estate for the Trustee to purchase similar equipment jeopardizing the operation of the oil and gas wells in West Virginia.

On the basis of the foregoing authority and the facts in this case, it is my conclusion that the issues here are not merely administrative matters and go beyond the mere administration of the estate. The activities involve the continued operation of the debtor's business. The claim arose after commencement of the Chapter 11 case as a result of the defendants having taken possession of the equipment in West Virginia after commencement of this case. In this particular matter the claim arises from the Trustee's operation of the debtor's business.

While it could be argued that the claim arises during, but not as a result of, the operation of the debtor's business, I note that the purpose for which the turnover action is brought is to obtain equipment to be used in the continued operation of the debtor's business. It is, in this context, as a result of the Trustee's operation of the business that the Trustee seeks the return of the property. It is, thus, a claim arising from the operation of the business.

Accordingly, venue in this matter is controlled by § 1473(d) and is proper only in the bankruptcy court for the district in which, under applicable non-bankruptcy venue provisions, an action might have been brought. This venue would be in the State of West Virginia.

IT IS THEREFORE ORDERED that the Motion to Dismiss for improper venue is denied. However, venue shall be transferred to the United States Bankruptcy Court for the District of West Virginia for disposition consistent with the local reference rules existing between that court and the United States District Court in that district.