STEPHEN H. ANDERSON, Circuit Judge.
 

 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R. App.P. 34(a); Tenth Cir.R. 34.1.8. The cause is therefore ordered submitted without oral argument.
 

 The only question presented in this appeal is whether the bankruptcy and district courts correctly concluded that, pursuant to 28 U.S.C. § 1473(d), venue for an 11 U.S.C. § 542(a) turnover proceeding properly lay in West Virginia, not Colorado.
 
 [1]
 
 The turnover proceeding was brought by a Chapter 11 trustee against defendants who allegedly improperly seized equipment from the debtor.
 

 The debtor, B & L Oil Company, is a West Virginia corporation with its principal place of business in West Virginia. B & L filed a Chapter 11 petition in the United States Bankruptcy Court for the District of Colorado.
 
 [2]
 
 Plaintiff, Garry R. Appel, was appointed trustee by the court and authorized to operate B & L’s business.
 

 The defendants, John R. Gable and the Alan Gable Oil Development Company (collectively “Gable”), are residents of West Virginia.
 
 [3]
 
 After B & L filed its Chapter 11 petition, Gable took possession of certain equipment located in West Virginia. The trustee thereafter filed in the Colorado bankruptcy court a turnover proceeding pursuant to 11 U.S.C. § 542(a), seeking to compel Gable to return the equipment to him.
 
 [4]
 
 Gable filed a motion to dismiss for
 
 *158
 
 improper venue, which the bankruptcy court denied, 42 B.R. 808. The court did, however, decide to transfer venue to the United States Bankruptcy Court for the District of West Virginia. The district court affirmed that decision and the trustee appeals. We reverse and remand.
 

 DISCUSSION
 

 Section 1473 is one part of the Bankruptcy Code’s venue provisions. Section 1473(a) sets out the basic “home court” rule for proceedings related to a Title 11 case:
 

 Except as provided in subsections (b) and (d) of this section, a proceeding arising in or related to a case under title 11 may be commenced in the bankruptcy court in which such case is pending.
 

 28 U.S.C. § 1473(a). As that section explicitly states, venue for “a proceeding arising in or related to a case under title 11” is proper in the court where the main bankruptcy case is pending, unless such proceeding falls within subsections (b) or (d).
 
 See generally Briney v. Burley (In re Burley),
 
 11 B.R. 369 (Bankr.C.D.Cal.1981).
 

 Both parties agree that, in this appeal, only subsection (d) of section 1473 is relevant.
 
 [5]
 
 Subsection (d) provides as follows:
 

 A trustee may commence a proceeding arising under title 11 or arising in or related to a case under title 11 based on a claim
 
 arising
 
 after the commencement of such case
 
 from the operation of the business of the debtor
 
 only in the bankruptcy court for the district where a State or Federal court sits in which, under applicable nonbankruptcy venue provisions, an action on such claim may have been brought.
 

 28 U.S.C. § 1473(d) (emphasis added). As the bankruptcy court noted, both parties further agree that the claim at issue here arose after the commencement of the Chapter 11 case. Thus, if the turnover proceeding is “based on a claim arising ... from the operation of the business of the debt- or,” venue lies only in West Virginia, not Colorado.
 
 [6]
 
 The relevant inquiry in this case, then, relates to the meaning of “arising ... from the operation of the business” and its application to the proceeding below.
 

 In analyzing that question, the bankruptcy court noted the “dearth of authority setting forth any meaningful distinction [between actions arising from the actual operation of the debtor’s business and administration of the estate] in the context of § 1473(d).”
 
 Appel v. Gable (In re B & L Oil Co.),
 
 42 B.R. 808, 813 (Bankr.D.Colo. 1984).
 
 [7]
 
 It examined cases involving 28 U.S.
 
 *159
 
 C. § 959(a), which permits trustees in certain circumstances to be sued “with respect to any of their acts or transactions in carrying on business connected with such property.” The court further noted the line of cases, beginning with
 
 Austrian v. Williams,
 
 216 F.2d 278 (2d Cir.1954),
 
 cert. denied,
 
 348 U.S. 953, 75 S.Ct. 441, 99 L.Ed. 744 (1955), holding that “[mjerely collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate, do not constitute ‘carrying on business’ as that term has been judicially interpreted.”
 
 U & I, Inc. v. Fitzgerald (In re Campbell),
 
 13 B.R. 974, 976 (Bankr.D.Idaho 1981);
 
 see also In re American Assoc. Systems, Inc.,
 
 373 F.Supp. 977 (E.D.Ky.1974); 4
 
 Collier on Bankruptcy,
 
 ¶ 721.05[1] (15th Ed.).
 

 The bankruptcy court stated, however, that those “decisions do not address the issue of whether collection of assets
 
 for use in the business
 
 is ‘carrying on business.’ ”
 
 Appel v. Gable (In re B & L Oil Co.),
 
 42 B.R. 808, 814 (Bankr.D.Colo.1984) (emphasis added). Calling that distinction “significant,” the court concluded that while mere collection of assets for liquidation, for example, does not constitute “carrying on the business,” the collection of assets “for purposes of being utilized in a continued operation of the business ... constitutes a part of efforts to continue to carry on the business of the debtor ... [and therefore] should be subject to the provisions of § 1473(d).”
 
 Id.
 
 Because in this case the trustee alleged in his turnover complaint that he wanted the seized equipment so he could utilize the equipment in the continued operation of the business, the bankruptcy court concluded that the turnover complaint was a “claim arising from the operation of the business” and was therefore subject to section 1473(d)’s venue provision. We disagree.
 

 Such a broad interpretation of the “arising from” language of section 1473(d) would tend to include almost any action by a Chapter 11 trustee to recover assets, since such assets may all eventually be used in the operation of the business. We view the statutory language more narrowly. By its express terms, subsection (d) refers to claims
 
 arising from
 
 the operation of the debtor’s business. Thus, that subsection applies to claims whose facts and legal bases originate from the business operations of the debtor. While it may, in some cases, be useful to consider the intended use of assets which are the subject of a claim, such intended use is not determinative of whether the claim regarding such assets arose from the operation of the debtor’s business. The bankruptcy and district courts erred in holding that intended use is determinative.
 
 [8]
 

 
 *160
 
 In this case, therefore, the inquiry must focus on the nature of the claim Gable asserts to the seized equipment and the basis for the trustee’s claim that it should properly be turned over to the estate.
 
 [9]
 
 However, the record in this case is totally devoid of any indication of why Gable seized the equipment and its apparent claim of entitlement to it. We cannot analyze the nature of the dispute regarding that equipment in the absence of any facts thereon.
 
 [10]
 
 If there are facts supporting the allegation that Gable’s seizure of the equipment and the trustee’s subsequent claim to such equipment arose from B & L’s business operations, then venue would properly lie in West Virginia. But without such facts, we simply are unable to analyze the nature of the turnover proceeding.
 
 [11]
 

 Accordingly, the order of the district court affirming the order of the bankruptcy court transferring venue to the Bankruptcy Court for the District of West Virginia is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.
 

 [1]
 

 . 28 U.S.C. § 1473 has been superseded by 28 U.S.C. § 1409, although there is no distinction material to this appeal between the two provisions. For convenience and to provide consistency with the lower court decisions in this case, references in this opinion will be to § 1473.
 

 [2]
 

 . B & L filed in the District of Colorado because it is affiliated with Empire Oil & Gas Co., which has a Chapter 11 case pending in the District of Colorado. No suggestion is made in this case that such filing was improper.
 

 [3]
 

 . B & L’s voluntary bankruptcy petition was signed by "John Gable" as president of B & L. There is no other indication in the record of the relationship, if any, between Gable and B & L.
 

 [4]
 

 . 11 U.S.C. § 542(a) provides in pertinent part: [A]n entity, other than a custodian, in possession, custody, or control ... of property that the trustee may use, sell, or lease ... shall deliver to the trustee, and account for, such property or the value of such property, unless
 
 *158
 
 such property is of inconsequential value or benefit to the estate.
 

 [5]
 

 . Gable has not filed an appellate brief in this case. However, Gable asserted section 1473(d) as the basis for its claim of improper venue in its answer to the trustee’s turnover complaint; we therefore infer Gable's agreement to the consideration of subsection (d) only.
 

 [6]
 

 . The bankruptcy court in this case first addressed the question of whether the turnover proceeding was an “administrative proceeding" and therefore properly resolved in the Colorado bankruptcy court where the underlying Chapter 11 case is pending. The court noted that “[t]he administrative matter limitation is a judicially-created limitation placed on the venue provisions of § 1473.... [which is] founded on a passage in Hse.Rpt. No. 595, 95th Cong. 1st Sess. (1977) on § 1473 of the Bankruptcy Reform Act.”
 
 Appel v. Gable (In re B & L Oil Co.),
 
 42 B.R. 808, 810 (Bankr.D.Colo. 1984). The bankruptcy court concluded that “an action to recover property under § 542 of the Code would not constitute an administrative matter. It is not a matter which directly involves the administration of the case, and it appears the issues involved could be tried without reference to any issues concerning the underlying bankruptcy action.”
 
 Id.
 
 at 811. Thus, the court concluded that the turnover proceeding need' not necessarily be considered where the main bankruptcy case was pending, and it then considered the applicability of section 1473(d). In this appeal Appel does not argue that the bankruptcy and district courts erred on that issue, so we do not address it.
 

 [7]
 

 .The bankruptcy court first addressed the applicability of section 1473(d) by considering the distinction some courts have drawn between operation of the debtor’s business by the debtor and such operation by the trustee. It concluded, based upon the legislative history and “clear language” of section 1473(d), that section 1473(d) is "applicable to any related proceeding commenced by a Trustee based on a claim arising after the commencement of a case under Title 11 and which arises from the operation of the business of the debtor, whether that operation is by the debtor or the Trustee.”
 
 Appel v. Gable (In re B & L Oil Co.),
 
 42 Bankr. 808, 813
 
 *159
 
 (Bankr.D.Colo.1984). There is no challenge on appeal to that portion of the bankruptcy court’s decision.
 

 [8]
 

 . In reaching our conclusion in this case, we note that there is an inherent tension between the "home court” venue rule embodied in section 1473(a) and the mandatory exception thereto contained in section 1473(d). Section 1473(a) furthers important goals in the efficient administration of bankruptcy cases, by centralizing proceedings in one court.
 

 In a bankruptcy case, a paramount consideration is speedy and economic administration of the bankruptcy case. This consideration underlies the general rule that the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court’s jurisdiction.
 

 Nixon Mach. Co. v. Roy Energy, Inc. (In re Nixon Mach. Co.),
 
 27 B.R. 871, 873 (Bankr.E.D.Tenn. 1983);
 
 see also Cole Assocs., Inc. v. Howes Jewelers, Inc. (In re Cole Assocs., Inc.),
 
 7 B.R. 154 (Bankr.D.Utah 1980). Section 1473(d), on the other hand, reflects a concern that normal post-petition business relations between a debtor and other parties not be unnecessarily disturbed by the fact of the debtor's pending bankruptcy case.
 

 The legislative purpose which underlies section 1409(d), as was the case with the superseded, almost identical 28 U.S.C. § 1473(d), is that it is intended to limit:
 

 "the trustee’s ability to commence a proceeding in the ‘home court’ if the proceeding commenced is based on a claim arising out of the debtor’s business after the commencement of the case.”
 

 1
 
 Collier on Bankruptcy
 
 ¶ 3.02[c] (15th Ed.) (quoting H.Rep. No. 595, 95th Cong., 1st Sess. 447 (1977));
 
 see also Continental Air Lines, Inc. v. Hillblom (In re Continental Air Lines, Inc.),
 
 61 Bankr. 758, 770 (Bankr.S.D.Tex.1986).
 

 There still remains the possibility of discretionary transfer of venue pursuant to 28 U.S.C. § 1412 (formerly section 1475).
 
 See infra
 
 note 11.
 

 [9]
 

 .The cases cited by the bankruptcy court in which the activities of the trustee were or were not deemed to be carrying on the business of the debtor do not alter our conclusion.
 
 Revere Copper Prod., Inc. v. Hudson River Sloop Clearwater, Inc. (In re Revere Copper & Brass), 29
 
 B.R. 584 (Bankr.S.D.N.Y.1983) (court suggests that trustee who permitted discharge of pollution in excess of federally permitted levels during continued operation of debtor-in-possession’s business could be deemed "carrying on business");
 
 Babb v. State ex rel. Oklahoma Tax Commission (In re Rhea),
 
 17 B.R. 789 (Bankr.W. D.Okl.1982) (trustee’s liquidation sale deemed not the "conduct of business”);
 
 Weymouth v. York (In re York),
 
 13 B.R. 757 (Bankr.D.Me. 1981) (court suggests that injury resulting from debtor’s operation of motor vehicle belonging to the estate could be deemed to have occurred while "carrying on business");
 
 In re Canarico Quarries, Inc.,
 
 466 F.Supp. 1333 (D.P.R.1979) (trustee’s post-petition operation of quarries deemed "carrying on business” requiring proper permit);
 
 Jaytee-Penndel Co. v. Bloor (In re Investors Funding Corp.),
 
 547 F.2d 13 (2d Cir.1976) (trustee’s failure to make mortgage payment deemed to be "routine ongoing business activity" of debtor);
 
 In re American Assoc. Systems, Inc.,
 
 373 F.Supp. 977 (E.D.Ky.1974) (trustee’s suit to collect pre-petition debt not "carrying on business’’);
 
 Fidelity Mortgage Investors v. Camelia Builders, Inc. (In re Fidelity Mortgage Investors),
 
 550 F.2d 47, 57 (2d Cir.1976),
 
 cert. denied,
 
 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977) (attempted foreclosure of mechanic’s lien filed pre-petition "arose from [debtor’s] bankruptcy, rather than [debtor’s] continuing conduct of business”);
 
 U & I, Inc. v. Fitzgerald (In re Campbell),
 
 13 B.R. 974 (Bankr.D.Idaho 1971) (suit could not be maintained under section 959 against trustee who allegedly personally guaranteed payment for services provided in storing and preserving assets of estate, as such conduct was not "carrying on business”). In another recent case involving venue under section 1409(d) (formerly 1473(d)), the bankruptcy court concluded that venue for a section 542 turnover proceeding brought by the debtor, Continental Air Lines, against minority shareholders of the company Continental sought to take over was to be determined, pursuant to section 1409(d), by applicable non-bankruptcy venue provisions. Implicit in the court’s conclusion is that Continental’s takeover attempt was in the normal course of Continental’s post-petition business; such a conclusion is certainly unexceptionable.
 
 Continental Air Lines, Inc. v. Hillblom (In re Continental Air Lines, Inc.),
 
 61 B.R. 758 (Bankr.S.D.Tex.1986);
 
 see also In re Newman Companies,
 
 45 B.R. 308 (Bankr.E.D. Wis.1985).
 

 In all of those cases, the court, either expressly or implicitly, focused on the nature of the transaction in question, not the trustee’s intended use of any assets at issue.
 

 [10]
 

 . As indicated,
 
 supra
 
 note 2, B & L's voluntary Chapter 11 petition was signed by “John Gable" as president of B & L. Thus, the turnover proceeding may be a dispute between the debtor corporation and its president. If that is the case, that is a factor which, in our view, supports resolution of the proceeding in the court where the main bankruptcy case is pending.
 

 [11]
 

 . We note that the possibility remains that venue can be transferred pursuant to 28 U.S.C. § 1412 (formerly § 1475) "in the interest of justice or for the convenience of the parties," assuming that the requisite burden of proof is carried. Neither the bankruptcy court nor the district court considered the applicability of that section to the question of venue in this case, and Gable has never raised it. Accordingly, we have not addressed its applicability here.