**In re ETALCO, INC., Debtor.**

**Etalco, Inc., Appellant,**

v.

**AMK Industries, Inc., Appellee.**

**BAP No. WW–00–1630–RRyH.**
**Bankruptcy No. 99–14017.**
**Adversary No. 00–07484.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on May 25, 2001.

Filed Dec. 20, 2001.

Michael M. Feinberg, Walter E. Barton, Karr Tuttle Campbell, Seattle, WA, for Etalco, Inc.

Michael L. Dillard, Karnopp, Petersen, Noteboom, Hansen, Arnett & Sayeg, Bend, OR, for AMK Industries, Inc.

Before RUSSELL, RYAN and HAINES,[1] Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge.

The appellant, a Washington-based company, filed its voluntary chapter 11[2] petition in the United States Bankruptcy Court for the Western District of Washington. The appellant and appellee, a Nevada-based company with its principal place of business in California, entered into a postpetition contract for the transport of a 350–ton piece of equipment from California to Texas. The contract was executed in California and all transactions pursuant to the contract took place in California and Texas.

A dispute between the parties arose as to the amount due for the transport services, prompting the appellant to file a complaint in the bankruptcy court against the appellee for money due. The appellee filed a motion to dismiss the complaint for lack of subject matter jurisdiction or improper venue. The bankruptcy court dismissed the complaint without prejudice. We AFFIRM.

## I. FACTS

In August 1999, appellee A.M. King Industries, Inc. ("AMK"), a Nevada-based company with its principal place of business in California that provides industrial and mine dismantling services worldwide, sold a 350–ton shiploader to a buyer in Texas. The terms of the sale required AMK to have the shiploader delivered to the buyer in Texas.

In late 1999, Albert M. King ("King"), on behalf of AMK, contacted appellant Etalco, Inc., a Washington-based transport and lifting company, by telephone, to inquire about the possibility of Etalco loading the shiploader onto AMK's barge in the Port of Los Angeles and unloading it from the barge once it reached Houston. AMK and Etalco conducted their contract negotiations over telephone, facsimile, and electronic mail, and in February 2000, the parties entered into a written contract, which was executed in California. The transport and lifting fee was $150,000.00.

In the interim, in December 1999, Etalco filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the Western District of Washington. Etalco did not inform AMK of the bankruptcy filing. AMK remained unaware of the filing until Etalco filed an adversary proceeding against AMK in the bankruptcy court.

Etalco completed the loading project in March 2000. Etalco then billed AMK for additional amounts, parts of which AMK disputed. AMK provided Etalco with a bond to cover the disputed charges in consideration for Etalco refraining from arresting the barge and shiploader once it reached Texas.

After the barge arrived in Texas, Etalco filed a complaint against AMK in the bankruptcy court for money due. In its jurisdictional statement, Etalco stated that the court had jurisdiction to hear the matter and that it was a core proceeding pursuant to 28 U.S.C. § 157(b). Etalco also con-

---

1. Randolph J. Haines, United States Bankruptcy Judge for the District of Arizona, sitting by designation.

2. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

tended that venue was proper pursuant to 28 U.S.C. § 1409. Etalco's only cause of action against AMK was for breach of contract. Etalco requested the court to enter a judgment against AMK and in favor of Etalco for $238,456.02, plus prejudgment interest, and attorneys' fees and costs.

AMK filed a motion to dismiss the complaint for lack of subject matter jurisdiction or improper venue ("Motion to Dismiss"). AMK argued that the bankruptcy court did not have subject matter jurisdiction over the state law contract dispute pursuant to either 28 U.S.C. § 157(b) or 28 U.S.C. § 157(c)(1). AMK argued that the adversary proceeding was a non-core proceeding because the underlying action was a breach of contract claim, the resolution of which should be determined by state law before a court sitting in a jurisdiction other than the jurisdiction in which the bankruptcy court sat. AMK additionally argued that the bankruptcy court did not have jurisdiction over the matter because it was not even related to the chapter 11 case. AMK maintained that the breach of contract action would have no direct or substantial impact on the estate.

In the alternative, AMK asserted that even if the matter were related to the bankruptcy case, the adversary proceeding should be dismissed for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b). AMK argued that 28 U.S.C. § 1409(d) required a chapter 11 debtor to refer to "applicable non-

bankruptcy provisions" to determine the proper venue for claims that arose postpetition. AMK asserted that the applicable nonbankruptcy venue provision was 28 U.S.C. § 1391(a).[3] AMK maintained that federal jurisdiction must be based on diversity of citizenship as Etalco's complaint established that Etalco was a Washington corporation and AMK was a corporation with its principal place of business in California. AMK asserted that in a civil action based solely on diversity, the United States Bankruptcy Court for the Western District of Washington was not the proper venue for this adversary proceeding as the bankruptcy court did not meet the requirements of 28 U.S.C. § 1391(a). AMK pointed out that it was not a resident of Washington and that Etalco's claim for money due against AMK arose solely out of the contract, which was executed in California, and performed in California and Texas. According to King's affidavit in support of the Motion to Dismiss, neither King nor any employee of AMK traveled to Washington to meet with representatives of Etalco.

Etalco argued that the court should deny the Motion to Dismiss because its action to enforce a postpetition contract for services arose in a case under Title 11 and was therefore a core proceeding. Etalco additionally maintained that venue was proper, relying on 28 U.S.C. § 1409(d) and Washington Revised Code § 4.28.185, Washington's long arm statute. Etalco argued that Washington Revised Code § 4.28.185 was the "applicable nonbank-

---

**3.** 28 U.S.C. § 1391(a) provides:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

ruptcy provision," not 28 U.S.C. § 1391(a). In support of its claim that the bankruptcy court was the proper venue, Etalco factually relied upon AMK's initial telephone call to Etalco in Washington, inquiring of its lifting and transport services. Etalco also made reference to AMK's website, pointing out that AMK's business activities were worldwide. In addition, Etalco argued that King "came to and was present in Washington for the purpose of negotiating the contract with Etalco at the time he made the crucial telephone calls." Response to Motion to Dismiss, Oct. 16, 2000, p. 7. According to the declaration of Paul Vande Zande ("Vande Zande"), Etalco's executive vice-president,

> Some of the negotiations which led to the contract ... occurred while Mr. King was physically present in the state of Washington. Mr. King came to the state of Washington in January 2000, to bid on dismantling the brewery equipment located at the former Rainier Brewery, in Seattle, WA. During this visit he informed me that he wanted to come to Everett, Washington to meet with us and discuss the contract terms. As events turned out, Mr. King was unable to come to our offices. Mr. King and I did, however, have at least two telephone conversations while he reported that he was in the state of Washington during which we negotiated some of the terms of [the] contract in question.

Declaration of Paul Vande Zande, Oct. 16, 2000, p. 2.

To dispute the declaration of Vande Zande regarding his position that King was physically present in Washington during contract negotiations, King submitted a reply declaration in support of AMK's Motion to Dismiss, stating:

> In my previous affidavit filed in support of this motion, I stated that my company, [AMK], has never engaged in any business activity in the State of Washington. That statement was and is accurate. In his declaration Mr. Vande Zande mistakenly states that I "came to the state of Washington in January 2000, to bid on dismantling the brewery equipment located at the former Rainier Brewery, in Seattle [Washington]." That statement is not true. At no time did I bid or consider bidding on dismantling a brewery in Seattle. Rather, in early 2000, I went to Portland, [Oregon] to bid on dismantling a former Blitz Weinhart brewery in Portland, [Oregon] which was owned by Stroh's.... We did not bid anything in Washington and never have. Mr. Vande Zande may be confused because in a phone conversation with him I may have mentioned the Seattle Rainier Brewery since it was owned by the same company, Stroh's, which owned the brewery in Portland which I was bidding on.
>
> I did speak with Mr. Vande Zande by phone while I was in Portland about the possibility of my driving up to meet with them at their office in Everett, [Washington] the next day. But since it would have been a long drive from Portland, and since Mr. Vande Zende [sic] was leaving town the following day, I never did go to Etalco's offices.

Reply Declaration of Albert M. King, Oct. 18, 2000, p. 2.

In October 2000, the court conducted a hearing on AMK's Motion to Dismiss at which it determined that the adversary proceeding was a "non-core related matter." The court expressed concern about venue and stated that it did not see that AMK had any contacts with the court's jurisdiction. The court stated:

> I am concerned about venue and whether there are any contacts with this jurisdiction .... I'm not seeing any contact at all here except that the guy traveled

through Washington. It seems to be clarified, at least to my understanding, that the calls were made from Oregon. There wasn't any real contact with Washington.

Transcript of Proceedings before the Hon. Thomas T. Glover, Oct. 20, 2000, pp. 19–20.

Though the court did not expressly state the basis upon which it dismissed the complaint, it appears that the basis was improper venue. The court issued its order dismissing the adversary proceeding, which simply stated:

> [T]he Court having reviewed the Motion and the Plaintiff's Response, and having considered the arguments of counsel, now, therefore it is hereby ORDERED that Plaintiff's Complaint be and the same is hereby dismissed without prejudice and without costs, and the clerk is directed to close the file.

Order Dismissing Adversary Proceeding and Closing File, Oct. 26, 2000. Etalco timely appealed.

## II. ISSUE

Whether the bankruptcy court properly dismissed the debtor's complaint for breach of contract against a nonresident defendant for improper venue or lack of subject matter jurisdiction.

## III. STANDARD OF REVIEW

■ We review the existence of subject matter jurisdiction *de novo*. *In re Consol. Pioneer Mortgage Entities*, 205 B.R. 422, 424 (9th Cir. BAP 1997). The interpretation of a federal venue statute is a question of law reviewed *de novo*. *In re Little Lake Indus., Inc.*, 158 B.R. 478, 480 (9th Cir. BAP 1993). We review a bankruptcy court's findings of fact for clear error. *In re ACI–HDT Supply Co.*, 205 B.R. 231, 234 (9th Cir. BAP 1997).

## IV. DISCUSSION

■ We may affirm a bankruptcy court's order on any ground clearly presented in the record. *In re E.R. Fegert, Inc.*, 88 B.R. 258, 261 (9th Cir. BAP 1988). AMK asserted that Etalco's adversary proceeding should be dismissed for lack of subject matter jurisdiction or in the alternative, improper venue. The bankruptcy court did not definitively determine whether the adversary proceeding was core. The court stated that it arguably had noncore subject matter jurisdiction. The court's basis for dismissing the adversary proceeding was venue as the court expressed particular concern about venue and determined that it could not find that AMK had sufficient contacts with Washington.

### A. *Venue Under Federal Law*

The venue of civil proceedings brought in bankruptcy court is governed by 28 U.S.C. § 1409, which provides in pertinent part:

> (a) Except as otherwise provided in subsections (b) and (d), a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending.
>
> . . .
>
> (d) A trustee may commence a proceeding arising under title 11 or arising in or related to a case under title 11 based on a claim arising after the commencement of such case from the operation of the business of the debtor only in the district court for the district where a State or Federal court sits in which, under applicable nonbankruptcy venue provisions, an action on such claim may have been brought.

28 U.S.C. § 1409.

■ Section 1409(d) applies here. The meaning of "applicable nonbankruptcy

venue provisions" is ambiguous. The phrase could mean that any nonbankruptcy venue provision can be applied. Or, it might mean that the nonbankruptcy venue provision must be applied absent the jurisdictional and nationwide service of process provisions of a bankruptcy case.

Because § 1409 is ambiguous, an examination of the legislative intent is appropriate. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241–42, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The purpose of § 1409(a) is to provide the debtor with a "home court" advantage. *See In re B & L Oil Co.*, 834 F.2d 156, 159 n. 8 (10th Cir.1987) (citing legislative history). However, the debtor loses its "ability to commence a proceeding in the home court if the proceeding commenced is based on a claim arising out of the debtor's business after the commencement of the case." *Id.* (citing legislative history) (internal quotation marks omitted).

█ The legislative history indicates that we should examine § 1409(d) without regard to the debtor's bankruptcy.

> Subsection (d) relates to claims in favor of the debtor arising out of the operation of the debtor's business after the commencement of the case. The trustee may commence a proceeding on such a claim only in the judicial district in which the debtor could have sued on the claim in the absence of bankruptcy.

1 COLLIER ON BANKRUPTCY ¶ 4.02[4] (Lawrence P. King et al. eds., 15th ed. rev.2001) (quoting S. Rep. No 989, 95th Cong., 2d Sess. 156 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5942).

Federal venue is generally governed by 28 U.S.C. § 1391, which provides in pertinent part:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.
>
> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.
>
> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within

which it has the most significant contacts.

28 U.S.C. § 1391.

Collier explains how the interplay between §§ 1409 and 1391 is to proceed:

> [I]f the debtor and the defendant are residents of different states, federal diversity jurisdiction will be present, assuming that the amount in controversy exceeds $75,000, and suit could have been brought by the debtor in the federal district court. The suit could have been brought by the debtor in any district that satisfies any of the criteria set out in 28 U.S.C. § 1391. The trustee may therefore bring suit in the district court which sits in any one of those districts. On the other hand, if the debtor and the defendant reside in the same state, diversity jurisdiction is not present and *unless other, independent grounds for federal jurisdiction are applicable, which grounds arise under statutes other than title 11,* the appropriate district court will be that which sits in the district in which is located the state court in which suit could have been brought. Thus, the appropriate search would be first, to find in which state the suit could have been brought for jurisdictional purposes and then, under the venue laws of that state, to find which particular court in that state could have entertained the action. Once that court has been located, it then becomes an easy matter to find out where that court sits, and the appropriate court for the trustee's suit is the district court for the district in which the state court, determined as above, sits.

COLLIER, *supra,* at ¶ 4.02[4] (footnotes omitted and emphasis added).

Section 1391(b) is only applicable when federal question jurisdiction exists. Here, we are dealing with a breach of contract claim. There is no federal question independent of title 11; therefore, (b) is inapplicable.

Section 1391(a) is applicable when diversity jurisdiction exists. Here, although the record is not clear, there appears to be diversity between the parties, and the amount in controversy exceeds $75,000.[4] Therefore, for this part of the discussion, we will assume *arguendo* that diversity exists. As can be seen by the later discussion of venue under Washington law, the result is the same. Thus, under § 1391(a), any district in which AMK resides or where a substantial part of the breach occurred would be a proper forum.

According to § 1391(c), a corporation such as AMK resides in any district in which it is subject to personal jurisdiction. If this were a prepetition cause of action, AMK would be subject to personal jurisdiction in Washington because of the nationwide service of process offered by Rule 7004. However, because § 1409(d) requires that we analyze venue in the absence of Etalco's bankruptcy, Rule 7004 cannot provide the basis for personal jurisdiction. Therefore, the inquiry into personal jurisdiction must focus on the Due Process Clause of the Fourteenth Amendment instead of the Fifth Amendment.[5]

The due process analysis under the Fourteenth Amendment is defined by *Int'l Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95

---

**4.** Etalco stated in its Opening Brief (footnote 3) that it "does not assert venue in the Western District of Washington based upon diversity."

**5.** When nationwide service of process is available, the due process analysis focuses on the defendant's contacts with the United States. *See Go–Video, Inc. v. Akai Elec. Co., Ltd.,* 885 F.2d 1406, 1414–15 (9th Cir.1989).

(1945), and its progeny, *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).[6] These cases indicate that due process is satisfied and in personam jurisdiction may be "asserted over a nonresident corporate defendant that has 'certain minimum contacts' with the forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir.2001) (citations omitted). This inquiry requires two determinations: "first, that the defendant have the requisite contacts with the forum state to render it subject to the forum's jurisdiction, and second, that the assertion of jurisdiction be reasonable." *Id.* (citations omitted).

 A state may assert either general or specific jurisdiction over a defendant. When a defendant's contacts with the forum state are "substantial" or "continuous and systematic," the defendant is subject to general jurisdiction within the state. *See Rano v. Sipa Press, Inc.*, 987 F.2d 580, 587–88 (9th Cir.1993) (citation omitted). When a defendant is not subject to general jurisdiction, it still may be subject to specific jurisdiction.

 The Ninth Circuit established a three-part test to determine whether exercising specific jurisdiction comports with due process:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws[;] (2)[t]he claim must be one which arises out of or results from the defendant's forum-related activities[; and] (3)[e]xercise of jurisdiction must be reasonable.

*Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir.1995) (citation omitted). Each prong of the test must be satisfied before specific jurisdiction may be exercised. *Id.*

 As to the first prong, in a breach of contract action, the existence of a contract alone is insufficient to create personal jurisdiction over a nonresident. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). To determine whether a contract constitutes purposeful availment depends upon "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* In making this determination, the "use of the mails, telephone, or other [forms of] international communications [during contract negotiations] simply do not qualify" as purposeful availment. *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir.1985) (citation omitted).

In *Roth v. Garcia Marquez*, 942 F.2d 617 (9th Cir.1991), a California film producer tried to purchase the film rights to a novel written by an author in Mexico City. Contract negotiations between the two occurred primarily by mail, telephone, and fax. *Id.* at 619. While the novelist did meet with the producer once in person in California, the meeting was not the novel-

---

**6.** As further discussed in part B *infra*, Washington's long-arm statute is co-extensive with federal law. *See Genetic Implant Sys., Inc. v. Core–Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir.1997). Therefore, "the jurisdictional inquiries under state law and federal due process merge into one analysis." *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir.1991).

ist's primary reason for visiting the state. *Id.* at 620.

On appeal, the Ninth Circuit held that the novelist had purposefully availed himself of California law. *Id.* at 622. However, it did not base its decision on the parties' contract negotiations. Rather, the Ninth Circuit focused on the ongoing relationship the contract created with California. The contract provided that all the editing, production, and advertising for the film would occur in the state. *Id.*

 As to the second prong, whether a claim arises out of the defendant's forum-related activities closely relates to the purposeful availment prong. *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331–32 (9th Cir.1984). Once purposeful availment is found, the question becomes whether the complained of activity relates to the defendant's actions in the forum state. *Id.*

 The reasonableness prong involves a weighing of various factors, which include

1) the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden on the defendant; 3) conflicts of law between the forum and defendant's home jurisdiction; 4) the forum's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum.

*Roth*, 942 F.2d at 623.

 Here, the only contact that AMK had with Washington was telephone calls, facsimiles, and electronic mail sent during contract negotiations. Though King reached out to Etalco by telephone to inquire about the possibility of loading a shiploader onto a barge in California and unloading the shiploader in Texas, no part of the contract was performed in Washington. It is clear that AMK did not purposefully avail itself of the privilege of conducting business in Washington simply by communicating to Etalco by telephone calls, facsimiles, and electronic mail.[7] It is undisputed that the terms of the contract were to be performed, and were actually performed, in California and Texas. The contract at issue here did not create ongoing work in Washington. The economic relationship created by the contract found its fulfillment outside of Washington.

Therefore, AMK did not purposefully avail itself of the privilege of conducting activities in Washington. The first prong of the *Omeluk* test is unsatisfied. Thus, AMK lacks the "minimum contacts" with Washington necessary to satisfy the Due Process Clause of the Fourteenth Amendment.

### B. *Venue Under Washington Law*

Etalco argues that the applicable nonbankruptcy provision is Washington Revised Code § 4.28.185(1)(a), Washington's long-arm statute.

 AMK argues that even with Washington Revised Code § 4.28.185(1)(a) as the applicable nonbankruptcy provision, the Western District of Washington would still not be the proper venue. Washington's long-arm statute creates specific jurisdiction, *See Van Steenwyk v. Interameri-*

---

**7.** Although Etalco argues that AMK's website could have some bearing on establishing real contacts with Washington, there is no evidence that AMK maintained a website during contract negotiations with Etalco. Even if there were a website that could be accessed from anywhere in Washington, this would be merely another form of international communication and, as such, would be insufficient to establish that AMK purposely availed itself of Washington law.

*can Mgmt. Consulting Corp.,* 834 F.Supp. 336, 339 (E.D.Wash.1993), and provides:

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section, enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

(a) The transaction of any business within the this state . . . .

WASH. REV. CODE § 4.28.185 (2000).

 The scope of the "transaction of any business" criterion set forth in the statute is co-extensive with the limits of the Due Process Clause of the Fourteenth Amendment. *Genetic Implant Sys., Inc. v. Core–Vent Corp.,* 123 F.3d 1455, 1458 (Fed.Cir.1997). As previously mentioned, the Due Process Clause of the Fourteenth Amendment requires that a non-resident defendant have certain minimum contacts with the forum state, so that the exercise of jurisdiction does not offend the "traditional conception of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.,* 557 F.2d 1280, 1287 (9th Cir.1977). Thus, we would reach the same result under Washington law that we reached in the discussion above concerning venue under federal law.

We must not lose sight of the fact that this is a simple contract cause of action and but for the debtor's bankruptcy, we would have no occasion to even be considering this matter. There is nothing so special about bankruptcy proceedings which would, under these facts, warrant a defendant corporation losing the important right to have this complaint brought in a venue based upon traditional concepts of minimum contacts, as mandated by *Int'l*

*Shoe Co. v. State of Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

## V. CONCLUSION

The venue of appellant/debtor Etalco, Inc.'s complaint for money due against appellee AMK Industries, Inc., alleging breach of contract, was not proper in the United States Bankruptcy Court for the Western District of Washington either under federal non-bankruptcy law or under Washington law. Thus, the bankruptcy court did not err in dismissing the complaint for improper venue.

In view of the fact that we have affirmed the court's dismissal of the adversary proceeding based on improper venue, there is no need for us to decide whether the bankruptcy court had subject matter jurisdiction over the adversary proceeding.

We AFFIRM.