Janusz OMELUK, Plaintiff–Appellant,

v.

LANGSTEN SLIP & BATBYGGERI
A/S, Defendant–Appellee.

No. 93–35389.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 4, 1994.

Decided April 14, 1995.

Lucy Lee Helm, Riddell, Williams, Bullitt & Walkinshaw, Seattle, WA, for defendant-appellee.

William Bishin (argued), Seattle, WA; and James M. Beard (on the briefs), Seattle, WA, for plaintiff-appellant.

Before: ALARCON, BEEZER and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

The sole issue before us is whether the defendant's contacts with the forum adequately supported the exercise of personal jurisdiction. We affirm the district court's dismissal, because they did not.

## I. FACTS

The case was dismissed on what was called a motion for summary judgment based on lack of jurisdiction, but more properly should be considered a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2). The district court did not hear testimony or make findings of fact. Instead, each side submitted declarations, deposition testimony and other evidence, and the district court dismissed based on the evidence submitted. The affidavits are not in conflict. Because the quantum of proof necessary for the plaintiff, where the district court receives only written submissions such as these, is whether the plaintiff presented a prima facie showing of jurisdictional facts, we set out the facts on the assumption that the matters so set forth could be proved. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.,* 907 F.2d 911, 912 (9th Cir.1990).

Omeluk, a seaman on the ship F/V ACONA, was gravely injured when a grate on the deck for storing fishing nets gave way. It

dropped like a trap door, so that he fell onto a ramp a deck below, and then overboard. The accident occurred in the Bering Sea, in international waters off Alaska. Omeluk sued his employer, Panpac Corporation, and also the Norwegian company which rebuilt the fishing vessel, Langsten Slip & Batbyggeri A/S. The suit was brought in the District Court for the Western District of Washington. Only the dismissal of his claims against Langsten is before us.

Langsten is a Norwegian corporation. It runs a shipyard in Tomrefjord, Norway, where it refurbished the vessel, and installed the welds on the grate which failed. Its business is repair and rebuilding of special purpose vessels, mostly on referral from brokers and others. Langsten does not advertise or solicit business in the United States, though it occasionally advertises in *Fishing News* in England. It does not maintain any offices, employees, property or bank accounts in the United States. Langsten is aware that some of the vessels it works on may be used in the United States, and has worked on three United States-bound vessels in the last fifteen years, including the one at issue. Almost all of the work on the vessels is done in Norway, and they are redelivered to the owners in Norway, not the United States.

Langsten personnel make no regular trips to the United States, though they have come four times for vessel christenings and cocktail receptions. Occasionally Langsten employees will travel to the United States on a specific repair request from an owner. One such trip was made when Langsten employees travelled to Dutch Harbor, Alaska to install a roe machine on the Acona. One year Langsten personnel attended "fish expo" in Washington "for informational purposes," but no evidence of any sales activity was offered.

When Langsten agreed to refurbish the Acona, the owner was AJVS, an Alaska firm. AJVS and a broker in Norway contacted Langsten, and delivered the vessel to Norway for the work. The contract was negotiated and signed in Norway. About a year later, AJVS sold its interest in the vessel and assigned the contract to Panpac, Omeluk's employer. Panpac is a New Zealand corporation with an office in Washington. Panpac negotiated certain changes in the contract, including a change to the part of the net storage deck which failed. All the negotiations took place in Norway and Denmark, and the Panpac contract modification was signed in Copenhagen. The contract provided for delivery of the vessel in Norway. The contract provided that any disputes would be arbitrated in Norway according to Norwegian law.

The vessel was being prepared to fish in waters off New Zealand and Alaska. At Panpac's direction, some electronic parts for the vessel were purchased from a Washington firm. Panpac officers thought that since the electronics on a ship are the parts that require service most often, it was important to have repair services in the Pacific for a boat that would fish off Alaska and New Zealand and be home ported in Seattle. At least 90% of the electronics installation was performed in Norway, but up to 10% was performed in Seattle. Langsten also bought the fishing nets in Washington, at Panpac's request. Some time during the rebuilding process, Langsten became aware that Panpac intended to use Seattle as the home port for the vessel.

## II. ANALYSIS

### A. Threshold Issues

■ We review the materials presented *de novo* to determine whether plaintiff established a prima facie case for in personam jurisdiction over Langsten. *Farmers Ins. Exch.*, 907 F.2d at 912.

■ Jurisdiction must comport with the state long-arm statute, and with the constitutional requirement of due process. *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir.1994). Because the Washington long arm statute reaches as far as the Due Process Clause, all we need analyze is whether the exercise of jurisdiction would comply with due process. *Id.* at 1405; *Deutsch v. West Coast Mach. Co.*, 80 Wash.2d 707, 497 P.2d 1311, 1314 (1972).

■ The Due Process Clause protects a defendant's "liberty interest in not being sub-

ject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985). "By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* at 472, 105 S.Ct. at 2182 (internal citations omitted). The fair warning requirement is satisfied if the defendant has "'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* (internal citations omitted).

■ "[F]oreseeability of causing *injury* in another State … is not a 'sufficient benchmark' for exercising personal jurisdiction." *Id.* at 474, 105 S.Ct. at 2183 (emphasis in original). "Instead, 'the foreseeability that is critical to due process analysis … is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id.* "'[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State.'" *Id.* at 474–75, 105 S.Ct. at 2183. "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id.* at 475, 105 S.Ct. at 2183 (internal citations omitted).

## B. General Jurisdiction

■ Langsten did not subject itself to the general jurisdiction of courts in the State of Washington. If its activities within Washington had been "substantial," or "continuous and systematic," then its relationship to the forum would have supported jurisdiction regardless of whether the cause of action was related to its activities in Washington. *Heli-*

*copteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984); *Data Disc, Inc.,* 557 F.2d at 1287. Its lack of a regular place of business in Washington is significant, and is not overcome by a few visits. *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1331 (9th Cir.1984). Langsten had no regular contact of any kind with the State of Washington, and had quite limited contact even with regard to the Acona.

## C. Specific Jurisdiction

■ Even without general jurisdiction over the defendant, the court in Washington would have jurisdiction specific to the case at bar, if the controversy were sufficiently related to or arose out of Langsten's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 414, 104 S.Ct. at 1872. In our circuit, we employ a three-part test to determine whether specific jurisdiction may be applied to a particular defendant:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws[;] (2) [t]he claim must be one which arises out of or results from the defendant's forum-related activities[; and] (3) [e]xercise of jurisdiction must be reasonable.

*Data Disc, Inc.,* 557 F.2d at 1287; *Roth v. Garcia Marquez,* 942 F.2d 617, 620–21 (9th Cir.1991). These three criteria are our circuit's approach to analyzing the single question of whether the "constitutional touchstone" of "minimum contacts" necessary for due process are satisfied. *Burger King Corp.,* 471 U.S. at 474, 105 S.Ct. at 2183. If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law. We do not discuss application of the "reasonableness" criterion, because the seven factor test we use, *Roth,* 942 F.2d at 623–24, by reason of its large number of factors to be balanced, is less certain in its application than the tests

for the first two criteria, and it is plain that the first two criteria are not satisfied.

### 1. Purposeful Availment.

Langsten did not purposefully avail itself of the privilege of conducting activities in the forum, so specific jurisdiction fails under the first of the three *Data Disc* criteria. *Data Disc, Inc.*, 557 F.2d at 1287.

About all that could be said in favor of Washington jurisdiction is that Langsten became aware, after Panpac bought AJVS's interest in the Acona, that the Acona would wind up using Seattle as its home port, and at Panpac's request, Langsten bought the Acona's electronics and nets in Washington. The Washington connection was the unilateral act of Panpac, not part of Langsten's marketing.

We said in *Hedrick v. Daiko Shoji Co.*, 715 F.2d 1355, 1358 (9th Cir.1983), "A manufacturer or supplier of a defective product who knew or should have known that a product would enter the stream of foreign commerce can be subjected, consistently with due process, to a forum state's long-arm jurisdiction and be sued in the forum where the injury occurred." There are three reasons why *Hedrick* does not lead to a determination that Washington had jurisdiction over Langsten. First, Washington is not where the injury occurred. Mr. Omeluk was injured in the Bering Sea, far away from Washington. Second, *Hedrick* is expressly disapproved in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 111, 107 S.Ct. 1026, 1031–32, 94 L.Ed.2d 92 (1987), so if that portion of *Asahi* is the law, then *Hedrick* is no longer the law of this circuit. *See United States v. Lancellotti*, 761 F.2d 1363, 1366–67 (9th Cir.1985). Third, a manufacturer of a large quantity of fungible goods can more reasonably anticipate being haled into a distant forum to defend itself, other things being equal, than a custom refurbisher.

At least a majority and perhaps all the justices agreed in *Asahi* that jurisdiction cannot be founded on the mere presence of a product in the forum, where the product has not been marketed there, and its presence there is not part of the regular and anticipated flow of the of products from the manufacturer. Langsten did not purposefully avail itself of the Washington market. In *Asahi*, the Court took note that the defendant did not maintain an office, agents, employees, or property in California; did not advertise or solicit business in the forum; did not create, control or employ the system which brought its product to the forum; and did not design the product in anticipation of sales in the forum. *Asahi Metal Indus. Co.*, 480 U.S. at 112–13, 107 S.Ct. at 1032–33. All the same factors exist in the case at bar. Langsten took no "purposeful" action to cause the vessel it rebuilt to be located in Washington.

All that Langsten did which arguably had a purposeful relationship to Washington was buy the electronics and nets there, and attend the christening ceremony and cocktail party for the rebuilt vessel. But as the Supreme Court has stated, "purchases and related trips, standing alone, are not a sufficient basis" for in personam jurisdiction. *Helicopteros Nacionales de Colombia*, 466 U.S. at 417, 104 S.Ct. at 1873–74. It also bears on the purposefulness of these contacts that they were made at Panpac's direction, and were not a purposeful choice by Langsten.

Omeluk argues that this case is like *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696 (3d Cir. 1990). But there, the shipyard advertised in the customer's state, worked extensively on the vessel there, and delivered the vessel there.

### 2. Arising Out Of.

Our circuit's second criterion, that the claim arises out of or results·from the forum-related activities, is also not satisfied in this case.

We have said that a claim arises out of the forum-related activities if it would not have happened but for the forum-related activities. *Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir.1990), *rev'd*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). The authority of our decision in *Shute* is questionable. The Supreme Court reversed our decision in *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). The Supreme Court did not reach the issue

of whether the "but for" test was appropriate in *Carnival Cruise Lines*. But neither did the Court expressly note that the jurisdiction issue was not before it, *cf. Misic v. Building Serv. Employees Health and Welfare Trust,* 789 F.2d 1374, 1379 (9th Cir.1986), or limit its grant of certiorari to a separable issue. Because of the posture of the Court's reversal of *Shute,* it is not clear whether the "but for" test survives.

In this case, we do not need to decide whether the "but for" test in *Shute* retains any vitality, because even if it does, the test has not been met. Neither the in-state purchases of electronic equipment and nets, nor attendance at the christening of the vessel, had anything to do with the welds on the grating giving way. Mr. Omeluk would have suffered the same injury even if none of the Washington contacts had taken place. His claim was therefore not one which arose out of or resulted from Langsten's forum-related activities. *Cf., Loral Terracom v. Valley Nat'l Bank,* 49 F.3d 555, 559–60 (9th Cir. 1995).

The reasons we gave for finding specific jurisdiction in *Gates Learjet* show why it is absent in the case at bar. Discussing whether the claim arose from the forum-related contacts in *Gates,* we noted that the Philippines company purposefully interjected itself into Arizona, it solicited the distributorship at issue in Arizona, made several visits to Arizona in the course of negotiating the agreement, accepted delivery of the airplanes in Arizona, and agreed to choice of law and forum selection provisions specifying Arizona. Each of these criteria points the other way in the case at bar.

The contract for retrofitting of the F/V ACONA provided for arbitration in Norway and application of Norwegian law for disputes arising out of the contract. Langsten did not solicit business in Washington, and had only limited and infrequent contacts with the state, which were themselves caused by the unilateral acts of Panpac, not purposeful choices of Langsten. Langsten purposely did not avail itself of the benefits of doing business in Washington. Customers from Washington or elsewhere had to find Langsten in Norway, bring their vessels to Norway for the work, pick them up in Norway, contract in Norway and Denmark, and agree to arbitrate in Norway. Langsten did not even make its existence known to Washington customers by advertising there. Langsten might reasonably foresee dispute resolution in Norway, but not in Washington.

### III. CONCLUSION

We affirm the dismissal for lack of in personam jurisdiction over Langsten. We intimate no view regarding whether jurisdiction would lie in Alaska, or some other forum other than the State of Washington. We direct the district court to make the attorneys' fees determination provided for by Wash.Rev.Code § 4.28.185(5) (1988).

AFFIRMED.