**In re AMTRAK "SUNSET LIMITED" TRAIN CRASH IN BAYOU CANOT, ALABAMA, ON SEPTEMBER 22, 1993.**

MDL Docket No. 1003.
Master Docket No. 94–5000–RV–C.

United States District Court,
S.D. Alabama,
Southern Division.

May 3, 1996.

Gregory B. Breedlove, Mobile, AL, Stephen D. Heninger, Birmingham, AL, Turner W. Branch, Branch Law Firm, Albuquerque, NM, J. Michael Papantonio, Levin, Middlebrooks, Pensacola, FL, Larry U. Sims, Helmsing, Lyons, Sims & Leach, Mobile, AL, Dennis C. Sweet, III, Langston, Frazer & Sweet, Jackson, MS, Lanny S. Vines, Edmond and Vines, Birmingham, AL, L. Andrew Hollis, Jr., Birmingham, AL, Martin H. Levin, Levin, Middlebrooks, Pensacola, FL, James J. Thompson, Jr., Birmingham, AL, Frank Granito, III, New York City, Steven A. Martino, Jackson, Taylor & Martino, Mobile, AL, for plaintiffs.

Broox G. Holmes, Sr., Mobile, AL, Jerry A. McDowell, Mobile, AL, John W. Vardaman, Jr., Washington, DC, John P. Coale, Coale & Van Susteren, Washington, DC, Richard R. Rosenthal, Birmingham, AL, for defendants.

VOLLMER, District Judge.

### ORDER NO. 78

This matter is before the court on defendant CSX's "motion ... to dismiss for lack of personal jurisdiction" (*see* tab 1, Civil Action No. 96–5116), plaintiff's response (tabs 1061 & 1062, Master Docket No. 94–5000; tab 3 Civil Action No. 94–5000), and CSX's reply brief (tab 1079, Master Docket No. 94–5000; tab 5, Civil Action No. 96–5116). Having duly considered the aforesaid materials, the court concludes for the reasons that follow that the motion to dismiss is due to be granted.

### Background

This action arises out of the derailment of Amtrak's "Sunset Limited" passenger train near Mobile, Alabama. The ensuing crash resulted in forty-seven fatalities, including that of plaintiff's decedent, Ruth Crenshaw ("Crenshaw"), and numerous injuries.

According to the complaint, plaintiff, Barbara Petrie ("Petrie"), is the duly appointed, qualified, and acting Personal Representative of Crenshaw's estate. Crenshaw, in fact, was her mother. Petrie is a resident of Arizona. Crenshaw was a resident of Hillsborough County, Florida. Crenshaw boarded the Sunset Limited in Houston, Texas, and was en route to Florida at the time of her death. She did not travel through Arizona on the train.

Petrie filed the complaint in this case against CSX and Amtrak in the United States District Court for the District of Arizona on September 20, 1995.[1] In it, she alleges that CSX was negligent in various ways. Specifically, she complains that CSX failed to: (1) properly design, build, inspect, maintain, and protect the Bayou Canot bridge; (2) warn vessels of the presence of the bridge; and (3) warn the "Sunset Limited" of the structural damage that had been caused to the bridge by the MAUVILLA or its tow. None of the allegations relates in any way to CSX's alleged contacts with Arizona. In fact, the complaint does not allege that CSX had *any* contacts with Arizona. The *only* connection of this case to that state is that the plaintiff is an Arizona resident.

CSX filed its motion to dismiss for lack of personal jurisdiction in February 1996. The case was transferred to this court by the Judicial Panel on Multidistrict Litigation in late February. At the time of transfer, the motion to dismiss was still pending. Briefing concluded on April 15, when CSX's reply brief was submitted.

Shortly after this case was transferred to this court, Petrie filed a new case in this court against CSX and Amtrak. *See* Civil Action No. 96–5113–RV–C. The new complaint is identical in all respects to the complaint in this case.

### Discussion

CSX seeks dismissal of this case on the basis that the Arizona court lacked perversity of citizenship.

1. Subject matter jurisdiction is premised on di-

sonal jurisdiction—specific or general—over it. In ruling on the motion, this court must apply the law that would be applied by the court in which the complaint was originally filed—in this instance, Arizona federal court. *See, e.g., In re Duarte, California Air Crash Disaster on June 6, 1971,* 354 F.Supp. 278, 279 (J.P.M.L.1973).[2]

■ Arizona law, the law of the forum state, governs the issue of personal jurisdiction in this case. *Brainerd v. Governors of the Univ. of Alberta,* 873 F.2d 1257, 1258 (9th Cir.1989). Under Arizona's long-arm provision, Arizona courts may exercise personal jurisdiction "over parties, whether found within or outside the state, to the maximum extent permitted by the ... Constitution of the United States." ARIZ.R.CIV.P. 4.2(a).[3] Consequently, the only issue for the court to determine is "whether personal jurisdiction in this case would meet the requirements of [the] due process" clause of the United States Constitution. *Brainerd,* 873 F.2d at 1258. "Federal law is controlling on the issue of due process." *Cubbage v. Merchent,* 744 F.2d 665, 667 (9th Cir.1984) (citation omitted).

■ The Due Process Clause prevents a court from exercising personal jurisdiction over a non-resident defendant unless that defendant has certain minimum contacts with the forum state such that an exercise of jurisdiction does not offend " 'traditional notions of fair play and substantial justice.' " *Core–Vent Corp. v. Nobel Industries AB,* 11 F.3d 1482, 1485 (9th Cir.1993) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.' " *Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804

(1984) (citing *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977)). The test is a flexible one, to be determined on a case-by-case basis. *See Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

■ The burden of establishing personal jurisdiction is on the plaintiff. *Ziegler v. Indian River County,* 64 F.3d 470, 473 (9th Cir.1995) (citing *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.,* 907 F.2d 911, 912 (9th Cir.1990)). Where, as in this case, the district court receives only written evidentiary submissions, the court must determine if the plaintiff has presented a prima facie showing of jurisdiction. *Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 268 (9th Cir.1995) (citations omitted). Once the plaintiff establishes that the defendant had minimum contacts with the forum state, "a rebuttable presumption arises that the exercise of jurisdiction is reasonable.... 'The defendant bears the burden of ultimately proving that the exercise of jurisdiction is unreasonable.' " *Tomar Electronics v. Whelen Technologies,* 819 F.Supp. 871, 875 (D.Ariz.1992) (quoting *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1397 (9th Cir.1986)).

■ Personal jurisdiction may be established in either of two ways: the plaintiff may establish that the forum court has specific jurisdiction or general jurisdiction over the non-resident defendant. *Burger King,* 471 U.S. at 473 n. 15, 105 S.Ct. at 2182 n. 15. " 'Specific jurisdiction is asserted when the defendant's forum contacts are sporadic, but the cause of action arises out of those contacts. This distinction is a significant one because in order to assert general jurisdiction there must be substantial forum related activity on the part of the defendant.' " *Tomar,* 819 F.Supp. at 875 (quoting 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1067, at 296 (West 1987)).

■ General personal jurisdiction may be exercised over a non-resident defendant if

---

**2.** Contrary to plaintiff's assertion, the transfer of the case to this court by the Judicial Panel of Multidistrict Litigation does not cure the jurisdictional defect and, thus, render the motion to dismiss moot.

**3.** Under admiralty law, issues of personal jurisdiction are governed by the forum state's long-arm statute. *See Klinghoffer v. S.N.C. Achille Lauro,* 937 F.2d 44, 50 (2d Cir.1991). In this case, the relevant "forum" is that of the transferor court.

that defendant's contacts with the forum are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416–17, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1983). Under such circumstances, the assertion of jurisdiction over the defendant does not offend the Due Process Clause, even if the lawsuit does not arise out of, or relate to, the defendant's contacts with the forum state. *Id.* at 414, 104 S.Ct. at 1872. The rationale for exercising general jurisdiction is that a non-resident defendant that has such "continuous and systematic" contacts " 'may in fact be said already to be "present" there.' " *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1331 (9th Cir.1984) (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 413 (9th Cir. 1977)).

A plaintiff has an especially heavy burden in seeking to establish general jurisdiction. *See, e.g., Cubbage,* 744 F.2d at 667–68 (no general jurisdiction over non-resident physicians despite considerable number of patients in forum, use of forum state's medical insurance system, and telephone listing that reached forum); *Gates,* 743 F.2d at 1330–31 (no general jurisdiction despite several visits and purchase in forum, significant communication with forum, and forum-selection clause favoring forum); *see also Amoco Egypt Oil Co. v. Leonis Navigation Co.,* 1 F.3d 848, 851 n. 3 (9th Cir.1993) (noting Supreme Court has upheld general jurisdiction only once).

■■■ Absent general jurisdiction, the court may assert specific jurisdiction over CSX, but only if this action sufficiently re-

lates to, or arises out of, CSX's contacts with Arizona. *Omeluk,* 52 F.3d at 270. To establish specific jurisdiction, the plaintiff must to satisfy each of the following elements: (1) that CSX performed some act by which it purposefully availed itself of the privilege of conducting activities in Arizona, thereby invoking the benefits and protections of its laws; (2) that plaintiff's claims arise out of or result from CSX's activities in Arizona; and (3) that the exercise of jurisdiction would be reasonable. *Id.*

■■■ Under the first of these elements, the defendant " 'must have performed some type of affirmative conduct which allows or promotes the transaction or business within the forum state.' " *Tomar,* 819 F.Supp. at 875 (quoting *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 381 (9th Cir. 1990)).[4] This requirement is "based on the presumption that it is reasonable to require a defendant who conducts business and benefits from his activities in a state to be subject to the burden of litigating in that state as well." *Brainerd,* 873 F.2d at 1259 (citing *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184). To satisfy it, a plaintiff must do more than show that the defendant's contacts with the forum were random, fortuitous, *or* attenuated, or based upon the unilateral activities of a third party. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183–84. The plaintiff may satisfy it, however, if he or she shows that the "defendant intentionally directed his activities into the forum." *Brainerd,* 873 F.2d at 1259 (citing *Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1486–87, 79 L.Ed.2d 804 (1984)).[5, 6]

**4.** In tort cases, the "purposeful availment" prong may be satisfied "if an out-of-forum defendant merely engages in conduct aimed at, and having effect in, the situs state." *Ziegler,* 64 F.3d at 473. "[T]he three elements of purposeful availment in tort cases are: (1) intentional action; (2) aimed at the forum state; and (3) causing harm that the defendants should have anticipated would be suffered in the forum state." *Id.* at 474 (citation omitted).

**5.** As the court noted in *Brainerd:*

In *Calder,* the Supreme Court distinguished untargeted negligence, which will not amount to purposeful availment, from intentional and allegedly tortious acts expressly aimed at the forum.... The court approved an "effects" test, holding that where the defendants knew that their actions would have a potentially devastating effect on the plaintiff, who resided [in the forum state], and that the brunt of the

injury caused by their actions would be felt in [the forum state], they were subject to the jurisdiction of the [forum state's] courts.... The fact that there was no physical contact with [the forum state] and that their actions all took place in [another state] would not relieve them of personal jurisdiction where the effects of their ... conduct were felt in [the forum state]. *Brainerd,* 873 F.2d at 1259–60 (citations omitted). *Calder* involved a suit brought by a California resident against two Florida residents: the editor of, and a writer for, The National Enquirer, a nationally-circulated, Florida-based newspaper. The plaintiff alleged that she had been libeled by an article that appeared in the newspaper's October 9, 1979, issue. *Calder,* 465 U.S. at 784–86, 104 S.Ct. at 1484–85.

**6.** The second element of the specific jurisdiction test has been described as "but for": this prong

The "purposeful availment" standard, which involves a "qualitative evaluation of the defendant's contact with the forum state," *Core-Vent*, 11 F.3d at 1485 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)), "requires more than foreseeability of causing injury in another state." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir.1995); *see World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295–96, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980) (" 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction"). The " 'foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there.' " *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183.

CSX is a corporation organized and existing under Virginia law, with its principle place of business in Florida. It owns and operates what is known as a "Class 1 railroad." It operates this railroad in 19 states,[7] but has not owned or operated, and does not own or operate, any railroad tracks in Arizona. Additionally, CSX

(1) has not maintained an agent for service of process in Arizona;

(2) has not had any offices in Arizona;

(3) has not had any post office boxes or telephone listings in Arizona;

(4) has not had any employees, agents, sales representatives, affiliates, or subsidiaries in Arizona; and

(5) has not filed any lawsuits in Arizona.

In sum, it has not been licensed or registered to do business in Arizona and has not engaged in business in Arizona.[8]

Plaintiff does not dispute any of the foregoing facts. The *only* connection that CSX has to Arizona, according to her, is that it owns track in other states that, when connected with tracks in Arizona owned by other railroads, forms a continuous "highway" over which rail commerce is conducted. CSX's tracks in other states, so her argument goes, made possible the travel of the Sunset Limited, a train owned by a third party, through Arizona to the fatal crash site in Alabama; and, it was foreseeable that the crash of the third-party's train in a state distant from Arizona could kill or injure a relative of an

---

is met "if 'but for' the contacts between the defendant and the forum state, the cause of action would not have arisen." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir.1995) (citing *Shute*, 897 F.2d at 385–86). In light of the court's disposition under the first prong of the test, the court need not address this element.

Under the last of the three specific jurisdiction elements, the following factors must be assessed to determine whether an exercise of specific jurisdiction would be reasonable:
(1) the extent of the defendant's purposeful injection into the forum state's affairs;
(2) the burden on the defendant of defending in the forum;
(3) the extent of conflict with the sovereignty of the defendant's state;
(4) the forum state's interest in adjudicating the dispute;
(5) the most efficient judicial resolution of the controversy;
(6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
(7) the existence of an alternative forum.

*Terracom*, 49 F.3d at 561; *Brainerd*, 873 F.2d at 1260 (citing *Lake v. Lake*, 817 F.2d 1416, 1421–22 (9th Cir.1987)). Because, as set forth hereinafter, the court concludes that the plaintiff has not satisfied the "purposeful availment" standard, the court need not address this element in detail. Suffice it to say, however, that at least five of the foregoing seven factors weigh strongly in CSX's favor.

7. Neither party has adduced any evidence identifying the states, other than Alabama, in which CSX does own railroad tracks or operates trains. Thus, the court does not know if CSX owns any tracks or operates any trains in California, Nevada, Utah, or New Mexico, the states contiguous to Arizona. Even if it did, however, the court's ultimate conclusion in this case probably would be the same, unless, perhaps, if CSX owned or controlled all of the rail lines leading to or from Arizona.

8. Moreover, this court has been unable to locate any published decision in which CSX has been sued in Arizona (in either state or federal court).

Arizona resident. Plaintiff asserts that these circumstances alone support the forum court's exercise of either general or specific personal jurisdiction over CSX.

The court has been unable to locate any authority to support the plaintiff's position, and the plaintiff has cited none. In the court's view and under the undisputed facts of this case, the "continuous highway" theory simply is insufficient to establish that CSX had systematic and continuous contacts with Arizona required for the assertion of general jurisdiction. According to the evidence before the court, CSX has had no direct or purposeful contacts with Arizona, either in connection with this case or not. Under those circumstances, general personal jurisdiction is lacking.

■ Plaintiff's theory also is insufficient to show that CSX purposefully availed itself of the benefits and protections of the laws of Arizona. If the court were to accept the plaintiff's argument, then CSX could be subject to suit in any of the 31 states in which it does not own any railroad lines or operate any trains, simply because a third party travels over CSX's rails into the forum state. Suit could be filed in the most remote state so long as it can be said that the train involved in the accident traveled to that state because it passed over CSX rails at one point during its journey (and not that it even *had* to pass over the CSX rails). Clearly, the Due Process Clause requires more than such " 'random,' 'fortuitous,' or 'attenuated' " contacts with the forum state, *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183, or proof that the defendant, from afar, was or could have been a facilitator of commerce in the forum state.[9]

9. Plaintiff contends that the filing of a new lawsuit in this forum moots the motion to dismiss. That plainly is not the case. The plaintiff also requests permission to amend her complaint in this case to allege jurisdiction of this court. That request is due to be, and hereby is, **DENIED.** Plaintiff makes one additional argument—that the filing of the complaint in the new case should be deemed to relate back to the filing of the complaint in this case. This argument is specious. Whether the complaint in the new case is infirm for any reason (*e.g.,* lack of personal juris-

*Conclusion*

In light of the foregoing, the court concludes that the CSX motion to dismiss for lack of personal jurisdiction is due to be, and hereby is, **GRANTED.** Unless the court otherwise rules by separate order, *see supra* note 9, this action shall continue to proceed against Amtrak.

It is **SO ORDERED.**

diction over one of the defendant or barred by an applicable statute of limitations period) is a matter to be determined in that case, separate and apart from the court's resolution of the motion to dismiss in this case.

Amtrak, also a defendant in this case and in plaintiff's newly filed action, has not moved for dismissal of the complaints in either action. On motion of the plaintiff or Amtrak, the court will determine the complaint under which plaintiff will be permitted to proceed against Amtrak.