**nMOTION, INC., Plaintiff,**

**v.**

**ENVIRONMENTAL TECTONICS COR-PORATION and ETC–PZL Aerospace Industries SP. Z O.O., Defendants.**

CV 01–524–BR.

United States District Court,
D. Oregon.

Nov. 21, 2001.

Michael M. Ratoza, Christine M. McLaughlin, Laura Caldera Taylor, Ratoza Long, P.C., Portland, OR, for Plaintiff.

Regina Hauser, David W. Axelrod, Schwabe, Williamson & Wyatt, P.C., Portland, OR, for Defendants.

## OPINION AND ORDER

BROWN, District Judge.

This matter comes before the Court on Defendant ETC–PZL's Motion to Dismiss (# 18) for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2).

Plaintiff nMotion, Inc. brought six claims against Defendants. The first two claims are based on the alleged breach of two confidentiality agreements entered into by nMotion and Defendant Environmental Tectonics Corporation (ETC–USA). In its third claim, nMotion alleges those breaches violated the Oregon Trade Secret Act. In claims four and five, nMotion alleges ETC–USA's wrongful acts give rise to claims against both ETC–USA and ETC–PZL for quasi contract and unjust enrichment. Finally, nMotion alleges ETC–USA induced and assisted a former principal of nMotion to breach his duty of loyalty to nMotion and wrongfully usurped nMotion's corporate opportunities.

nMotion seeks compensatory damages including Defendants' gains, profits and advantages, punitive damages, attorneys' fees, costs, and an order enjoining ETC–USA and ETC–PZL from using nMotion's confidential information.

For the reasons that follow, the Court **DENIES without prejudice** ETC–PZL's Motion to Dismiss to the extent it is based on an asserted lack of specific personal jurisdiction.

## FACTUAL BACKGROUND

nMotion is a small, closely-held Oregon corporation that was organized for the purpose of developing and implementing a business plan centered around three-dimensional flight simulator computer software called "Pro Pilot."

ETC–USA is incorporated under the laws of Pennsylvania and is headquartered in that state. ETC–USA designs, manufactures, and sells airplane flight simulation hardware and software, including a product known as the General Aviation Trainer (GAT).

ETC–PZL, a Polish corporation, is the software programming arm of ETC–USA. ETC–PZL wrote the programming code for ETC–USA's flight training software, including the software employed in GAT. ETC–USA owns 95% of ETC–PZL.

In September 1999, nMotion's principals, Mark Pechnick, Robert Schyberg, and William McHugh, learned that Havas Interactive Software recently purchased Sierra On–Line, Inc., the developer of the Pro Pilot software. nMotion became aware that Havas intended to sell the programming

code for Pro Pilot, and nMotion contacted Sierra about acquiring the program. Sierra agreed not to actively work with any other party regarding the sale of Pro Pilot while nMotion attempted to locate a partner to acquire and to implement the software.

In January 2000, nMotion was aware that ETC–USA was seeking to improve its GAT program. While ETC–USA generally was pleased with the appearance and functionality of the flight gauges and flight models that ETC–PZL had written for the GAT product, it was not happy with the "out of window" visual experience.

At that time, ETC–PZL already was working on enhanced coding for ETC–USA's proposed "GAT 2" software.[1] This work was being performed as part of a new contract that ETC–USA had entered into with the Nigerian government. ETC–USA wished to have the software completed by May 2000. ETC–USA, however, was disappointed with the visual qualities of the software upgrades then being produced by ETC–PZL.

On January 18, 2000, Pechnick, Schyberg, and McHugh flew to Florida to present nMotion's proposal to ETC–USA. nMotion proposed a business venture involving the acquisition of Pro Pilot and the enhancement of the GAT software by incorporating the favorable features of Pro Pilot. Those favorable features included a more realistic real world flight experience for the pilot and an out-of-window graphical view of North America, Europe, the Hawaiian Islands, and some 2,500 airports.

Between January and March 2000, nMotion and ETC–USA engaged in negotiations pertaining to the proposed joint venture. nMotion's principals met in Pennsylvania and in Oregon with engineers and executives who worked for ETC–USA.

nMotion provided ETC–USA with a software development proposal that contained detailed information regarding the integration of Pro Pilot into GAT 2 and a proposed budget that enabled ETC–USA to create a fishbone diagram showing the development of the GAT 2 simulator with and without the integration of Pro Pilot. At some point, nMotion gave ETC–USA permission to contact Sierra directly to discuss the acquisition of Pro Pilot.

By late February, ETC–USA requested nMotion's principal, Pechnick, to travel to Warsaw in order to determine whether ETC–PZL's Warsaw programmers were capable of assisting in the integration of Pro Pilot into GAT 2. Pechnick had written much of the software code for Pro Pilot. nMotion alleges ETC–USA wanted Pechnick to work closely with ETC–PZL's programmers and to supervise the programming for the integration of the Pro Pilot software into the GAT 2 software. In fact, by the end of March 2000, ETC–USA indicated it was interested in purchasing Pro Pilot only if Pechnick would supervise the future development of the software.

During the course of these negotiations, the parties signed two reciprocal confidentiality agreements that covered both Pro Pilot and other "software engineering solutions." On March 28, 2000, Pechnick ended his business relationship with nMotion. ETC–USA thereafter refused to enter into the joint venture agreement with nMotion.

ETC–USA subsequently acquired Pro Pilot as nMotion had proposed. ETC–USA then formed an entity in Eugene, Oregon, called ETC–Interactive headed by Pechnick. nMotion alleges Pechnick's duties include the supervision of ETC–PZL's Polish programmers.

nMotion further alleges ETC–USA recently offered for sale a new GAT 2 prod-

---

**1.** The parties refer to the product as either "GAT 2" or "GAT II." The Court uses the name GAT 2 to refer to the upgraded version of the original GAT product.

uct that incorporates Pro Pilot features and code. nMotion also alleges ETC–PZL developed part of the system software for this new GAT 2 simulator, including the visual display systems.

nMotion contends Pechnick, the developer of the Pro Pilot code, would have had to work closely with ETC–PZL's programmers in Warsaw to integrate Pro Pilot into the GAT 2 software. nMotion further contends it would have been impossible for Pechnick to complete the integration of Pro Pilot into GAT 2 within the time required for the Nigerian sale without constant and detailed communication between ETC–Interactive in Oregon and ETC–PZL's Warsaw office.

### STANDARDS

■ nMotion has the burden of establishing personal jurisdiction. *Ziegler v. Indian River County,* 64 F.3d 470, 473 (9th Cir.1995). When a motion to dismiss for lack of personal jurisdiction is made as a defendant's initial response to a complaint and the court decides the jurisdictional issue based on affidavits and written discovery materials as opposed to an evidentiary hearing, the plaintiff is only required to make a *prima facie* showing of jurisdictional facts to defeat the motion to dismiss. *Myers v. Bennett Law Offices,* 238 F.3d 1068, 1071 (9th Cir.2001). *See also Farmers Ins. Ex. v. Portage La Prairie Mut. Ins. Co.,* 907 F.2d 911, 912 (9th Cir.1990). "[T]he plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir. 2001). Unless directly controverted, the plaintiff's version of the facts is taken as true for purposes of a Rule 12(b)(2) motion

to dismiss. *Id.* Conflicts in the evidence set forth in the parties' affidavits must be resolved in the plaintiff's favor. *Id.*

■ When pertinent facts bearing on the question of jurisdiction are controverted or a more satisfactory showing of the facts is necessary, the trial court may permit discovery to aid in determining whether personal jurisdiction exists. *Data Disc, Inc. v. Systems Technology Assoc., Inc.,* 557 F.2d 1280, 1285 n. 1 (9th Cir.1977). The trial court has broad discretion to grant or to deny discovery "and will not be reversed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Id.* In addition, the district court has the discretion to take evidence at a preliminary hearing if the pleadings and affidavits raise issues of credibility or disputed questions of fact with regard to jurisdiction. *Id.* at 1285. At such a hearing, the plaintiff has the burden to show jurisdictional facts by a preponderance of the evidence. *Id.*

■ When the jurisdictional facts are "intertwined" with the merits and a decision on the jurisdictional issues is dependent on a decision on the merits, it is preferable for the Court to decide the jurisdictional issues at trial to avoid the risk of prejudicing the plaintiff's case on the merits. *Id.* at 1285 n. 2. Thus, the trial court may decide the plaintiff should not be required to meet the higher burden of proof that is associated with the presentation of evidence. *Id.*

### DISCUSSION

■ nMotion argues this Court has both general and specific personal jurisdiction over ETC–PZL.[2] Under either test, the

---

**2.** nMotion contends the Court should deny ETC–PZL's Motion without leave to refile because it failed to confer with nMotion's counsel as required by LR 7.1 before filing its Motion. The Court agrees ETC–PZL did not

comply with the terms or the spirit of LR 7.1 and alerts ETC–PZL that such noncompliance in the future likely will result in the Court denying a non-complying motion without

same threshold requirement of due process applies.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution permits personal jurisdiction over a defendant in any State with which the defendant has certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. In judging minimum contacts, a court properly focuses on the relationship among the defendants, the forum, and the litigation.

*Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (quotations and citations omitted).

■ When, "as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." *Core–Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1484 (9th Cir.1993). "Oregon's long-arm statute confers jurisdiction to the extent permitted by due process." *Gray & Co. v. Firstenberg Mach. Co.,* 913 F.2d 758, 760 (9th Cir.1990). *See* Or. R. Civ. P. 4L. Consequently, the only question for the Court is whether the exercise of jurisdiction over ETC–PZL comports with constitutional due process requirements. *See Core–Vent,* 11 F.3d at 1482.

### Sufficiency of the Record and Standard of Proof

nMotion has not requested additional time to respond to ETC–PZL's Motion to Dismiss in order to conduct discovery or an evidentiary hearing on the jurisdictional issue.

In support of its Motion to Dismiss, ETC–PZL filed two affidavits by its managing director, Cezary Szczepanski, and an affidavit by Mark Pechnick. In their affi-

davits, Szczepanski and Pechnick allege two versions of the GAT 2 product exist. Prior to the acquisition of Pro Pilot and the opening of the ETC–Interactive Oregon office, ETC–PZL worked on a very early or "prototype" model of GAT 2. The prototype allegedly did not include any features of Pro Pilot.

ETC–PZL contends, however, ETC–Interactive created a second version of GAT 2 known internally as "GAT II, gen.2" or the second generation of GAT 2. That product used certain features of the Pro Pilot graphic code. ETC–PZL contends the remainder of the code was written entirely by ETC–Interactive staff between September 2000 and June 2001. The ETC–Interactive version of GAT 2 does not include any software written by ETC–PZL, and ETC–PZL had no involvement in the design or creation of the second generation of GAT 2. ETC–PZL further contends it has never worked on any version of the GAT product that involved the use of any Pro Pilot elements.

In essence, ETC–PZL argues it did not work on the integration of Pro Pilot's visual code with GAT 2, and thus it did not interact with ETC–Interactive in Oregon. As explained below, if ETC–PZL's statement of the facts can be proven, it would mean ETC–PZL is not subject to this Court's jurisdiction and is not liable to nMotion under any of its theories. Because the merits of nMotion's claims against ETC–PZL are substantially intertwined with the jurisdictional factual dispute, this Court will not compel nMotion presently to prove jurisdiction by the same preponderance of the evidence standard required for proof of the merits of its claims against ETC–PZL at trial. Accordingly, nMotion need only make a *prima*

reaching its merits. Because of the importance of determining the Court's jurisdiction,

however, the Court will address ETC–PZL's Motion as it stands.

*facie* showing that this Court has personal jurisdiction over ETC–PZL.

### General Jurisdiction

■ A district court has general jurisdiction over the defendant if the plaintiff shows the defendant has "substantial" or "continuous and systematic" contacts with the forum state. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d 1082, 1086 (9th Cir.2000) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). This standard is "fairly high" and requires the contacts to be of the sort that approximates physical presence within the state. *Id.* (internal citations omitted). Pertinent factors to consider are whether the defendant:

1. makes sales, solicits, or engages in business in the state,

2. serves the state's markets,

3. designates an agent for service of process,

4. holds a license, or

5. is incorporated in the state.

*Id.* (citing *Hirsch v. Blue Cross, Blue Shield of Kansas City,* 800 F.2d 1474, 1478 (9th Cir.1986)).

■ ETC–PZL's contacts are not of a nature, quality, or quantity that approximates physical presence in Oregon. Assuming nMotion's allegations are true, ETC–PZL acted in concert with ETC–Interactive in Oregon to integrate the software code of Pro Pilot into ETC–USA's GAT 2 product. nMotion alleges this integration necessarily would have involved numerous and detailed communications between ETC–PZL's Polish engineers and ETC–Interactive in Oregon because only ETC–PZL was familiar with the code for the original GAT project and only ETC–Interactive in Oregon was familiar with the code for Pro Pilot. There is a strong inference that this software integration project would have included multiple and numerous telephone calls, correspondence, and e-mails between Oregon and Poland and almost certainly included visits by Polish engineers to ETC–Interactive's Oregon facility. This latter inference is further supported by the fact that ETC–PZL's engineers often traveled to the United States to work on software projects with Defendant ETC–USA in the past. In fact, ETC–PZL programmers traveled to the United States ninety times during 1999 to work on various programming projects for ETC–USA.

ETC–PZL argues nMotion's allegations are based on "hearsay and unfounded inferences" and "in fact are in error" because ETC–PZL did not assist ETC–Interactive in the integration of Pro Pilot into GAT 2. At this stage, however, the Court must accept all of nMotion's allegations and all reasonable inferences arising from those allegations as true and resolve all conflicts between the facts contained in the parties' affidavits in nMotion's favor. *See Peterson v. Highland Music, Inc.,* 140 F.3d 1313, 1320 (9th Cir.1998)(court has jurisdiction over defendant if the plaintiff alleges facts that give rise to a strong inference of sufficient contacts). While ETC–PZL may be able to rebut the inferences that logically flow from nMotion's allegations under a preponderance of the evidence standard, nMotion need not meet that higher evidentiary standard at this stage of the proceedings. *Id.*

ETC–PZL's contacts with this forum, including possible telephone calls, e-mails, correspondence, and perhaps visits to Oregon, were all related to the single project of integration of Pro Pilot into GAT 2. Such contacts are too attenuated to support the exercise of general jurisdiction. *See Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1330–31 (9th Cir.1984), *cert. denied,* 471 U.S. 1066, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985) (several visits and pur-

chases in forum, solicitation of contract in forum including a choice of law provision favoring the forum, and extensive communication with forum are not sufficient contacts to support a finding of general jurisdiction).

nMotion's remaining allegations involve pervasive and continuous contacts between ETC–PZL and ETC–USA in Pennsylvania and elsewhere. ETC–USA, however, is not located in Oregon. The contacts between the Defendants do not demonstrate a connection between ETC–PZL and Oregon sufficiently continuous and substantial to support a reasonable conclusion that ETC–PZL has a physical presence in Oregon for all practical purposes.

It is undisputed that ETC–PZL is not incorporated under the laws of this state, does not have an office in Oregon, does not hold a license to conduct business here, and does not have an agent for service of process in Oregon. It is also undisputed that ETC–PZL does not participate in marketing programs nor sells any goods in Oregon. Thus, none of the factors described in *Bancroft & Masters* support the exercise of general jurisdiction here. The Court, therefore, finds ETC–PZL's contacts with Oregon do not demonstrate sufficient activity in Oregon to support general jurisdiction.

### *Specific Jurisdiction*

Even if the district court does not have general jurisdiction over the defendant, the court may have jurisdiction over the specific case before it "if the controversy [was] sufficiently related to or arose out of the defendants' contacts with the forum." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995). The Ninth Circuit applies the following three-part test to determine whether a district court constitutionally may exercise specific jurisdiction over a nonresident defendant:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998) (quoting *Omeluk*, 52 F.3d at 270).

### A. Purposeful Availment

The first prong of the three-part test requires nMotion to show Defendant ETC–PZL purposefully availed itself of the privilege of conducting activities in the forum state. This prong is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th cir.1995). This requirement is designed to ensure that a nonresident defendant will not be haled into court based upon "random, fortuitous or attenuated" contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

The Court finds nMotion has made a *prima facie* showing that satisfies this test. Again, for purposes of this motion, the Court must accept nMotion's allegations as true and make all reasonable inferences in its favor. Accordingly, ETC–PZL worked closely with Oregon-based ETC–Interactive to integrate the Pro Pilot software into ETC–PZL's existing GAT software code. This integration necessarily entailed numerous contacts with Oregon over a period of at least several months. Those contacts probably included telephone calls, e-mails, and paper correspon-

dence sharing software information and code. Defendant ETC–PZL's software programmers undoubtedly traveled to Oregon to discuss the progress of the integration and to speed up the exchange of information.

In *Peterson*, the Ninth Circuit held plaintiff presented documents giving rise to a "strong inference" that the defendant engaged in negotiations with forum residents, and as part of those negotiations, "probably" wrote letters, "probably" made telephone calls to resident offices, "quite possibly" traveled to the forum, and "may" have contracted with forum residents. *Peterson*, 140 F.3d at 1320. Based on those documents and the reasonable inferences therefrom, the court concluded the plaintiff established sufficient purposeful contacts with the forum to support the court's exercise of personal jurisdiction at the motion to dismiss stage. *Id.*

For purposes of this motion, the Court must infer ETC–PZL has deliberately acted within Oregon in order to complete a joint project that required the expertise of Oregon residents. nMotion alleges ETC–PZL profited from those joint activities. As such, there would be a substantial connection between ETC–PZL and Oregon sufficient to put ETC–PZL on notice that it could be haled into court here for claims arising out of its collaboration with ETC–Interactive. Accordingly, nMotion's allegations are sufficient to make a *prima facie* showing that ETC–PZL purposefully

availed itself of the benefits and burdens of doing business in Oregon.[3]

### B. "But For" Test

The second prong of the specific jurisdiction test requires the plaintiff to show its claims arise out of or result from the defendant's contact with the forum state. *See Panavision*, 141 F.3d at 1320. The Ninth Circuit relies on a "but for" test to determine whether this requirement is met. *See Ziegler*, 64 F.3d at 474. Under this test, the Court must determine whether nMotion's claims against ETC–PZL would have arisen "but for" ETC–PZL's contacts with Oregon. *Ballard*, 65 F.3d at 1500. nMotion has satisfied this requirement as well. "But for" ETC–PZL's work with ETC–Interactive in Oregon to integrate Pro Pilot into the GAT 2 software system, nMotion would have no claim against ETC–PZL for unjust enrichment or quasi-contract based on that integration.

ETC–PZL argues the "but for" test should be applied to determine whether nMotion would have suffered an injury "but for" ETC–PZL's Oregon contacts. This is not the test employed by the Ninth Circuit. Although nMotion also may have been injured by the conduct of ETC–USA, including ETC–USA's breach of the confidentiality agreements and encouragement of Pechnick to breach his fiduciary obligations to nMotion, the fact that these injuries did not arise out of ETC–PZL's Oregon contacts does not affect this

---

**3.** nMotion also argues this Court has specific jurisdiction over ETC–PZL because it "engage[d] in conduct aimed at, and having effect in" Oregon even if it did not engage in activities in Oregon. *Ziegler*, 64 F.3d at 473. The Ninth Circuit explained this "effects test" is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters*, 223 F.3d at 1087. Because the

Court finds a sufficient *prima facie* showing of purposeful activities within Oregon, it is unnecessary to address whether ETC–PZL, as a 95% owned subsidiary of ETC–USA, knew "or should have known" its use of Pro Pilot would have effects on nMotion in Oregon. The Court also need not address whether it is sufficient for a plaintiff to show that a defendant targeted its activities at the forum state in general as opposed to targeting the plaintiff in particular.

Court's jurisdiction over ETC–PZL for claims that do arise out of ETC–PZL's activities in Oregon relating to the GAT 2 improvements. The existence of injuries caused solely by ETC–USA is of no consequence.

### C. Reasonableness Test

■■■ Finally, the Court's exercise of jurisdiction over a nonresident defendant must be reasonable. For jurisdiction to be reasonable, it must comport with fair play and substantial justice. *See Burger King,* 471 U.S. at 476, 105 S.Ct. 2174.

> The reasonableness determination requires the consideration of several factors: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Bancroft & Masters,* 223 F.3d at 1088 (citing *Burger King,* 471 U.S. at 476–77, 105 S.Ct. 2174). The district court must presume an otherwise valid exercise of specific jurisdiction is reasonable. *Ballard,* 65 F.3d at 1500. Thus, a defendant has the burden of demonstrating unreasonableness and must put on a "compelling case." *Burger King,* 471 U.S. at 476–77, 105 S.Ct. 2174.

ETC–PZL argues a balance of the three "relevant factors" weighs heavily in favor of declining jurisdiction in this matter. Since none of the factors alone is dispositive, however, the Court must balance all seven factors in each case. *Roth v. Garcia Marquez,* 942 F.2d 617, 623 (9th Cir.1991).

### 1. Extent of Purposeful Interjection

Although not extensive enough to support general jurisdiction, ETC–PZL's contacts with Oregon are sufficient to demonstrate a purposeful interjection into the forum state for purposes of this action. While this factor weighs in favor of exercising jurisdiction, the contacts at issue are not "considerable" or widespread. *Ballard,* 65 F.3d at 1500–01. This factor, therefore, does not tilt heavily toward a finding of reasonableness. *Id.*

### 2. Burdens on Defendant

ETC–PZL contends it would be a great burden to defend itself in an action brought in Oregon where it is unfamiliar with the legal system and where it has no physical presence. ETC–PZL further argues these burdens should be given "significant weight" when the Court assesses the reasonableness of an assertion of jurisdiction over a foreign national. *See Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

To the contrary, nMotion contends ETC–PZL's argument that litigation in this state would be particularly onerous does not withstand scrutiny because ETC–PZL was able to overcome the burdens of international communications and travel in order to collaborate with ETC–Interactive on the GAT 2 software project. Moreover, as noted earlier, ETC–PZL employees have traveled to the United States extensively in the past for business reasons and presumably will continue to do so.

"Unless such inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Roth,* 942 F.2d at 623 (internal quotations and citations omitted). The Court concludes the inconvenience to ETC–PZL to defend itself in this forum does not rise to

the level of a deprivation of due process. The Court turns, therefore, to the remaining five factors.

### 3. Extent of Conflict with Sovereignty of Foreign State

"The reasonableness of jurisdiction depends also in part upon the seriousness of the potential affront to the sovereignty" of the defendant's home state or nation. *Gates Learjet,* 743 F.2d at 1333. Litigation against a foreign defendant creates a higher jurisdictional barrier than a suit against a citizen of another state. *Sinatra v. Nat'l Enquirer, Inc.,* 854 F.2d 1191, 1199 (9th Cir.1988). This factor cannot be given controlling weight, however, or no action could be brought in district court against a foreign national. *Gates Learjet,* 743 F.2d at 1333.

nMotion argues its cause of action does not raise "a facial issue impacting Poland's sovereignty." The Court disagrees. ETC–PZL is a corporation organized under Polish law with its principal place of business and only office in Warsaw. Poland's sovereign interest in regulating and protecting such corporations is implicated when a Polish corporation is sued abroad.

The fact that ETC–PZL is 95% owned by its American parent, ETC–USA, does not eliminate the interference with Poland's sovereignty in this case, but it does lessen the extent of that interference. Nonetheless, this factor weighs against exercising jurisdiction over ETC–PZL.

### 4. Forum State's Interest in Adjudication

nMotion cites *State of Oregon Ex rel. Academy Press, Ltd. v. Beckett,* 282 Or. 701, 717, 581 P.2d 496 (1978), for the proposition that the State of Oregon maintains a strong interest in the adjudication of this matter. In that case, however, the court held Oregon has a strong state interest in having its law applied for the protection of one of its residents who claims to have been the victim of a tort by a foreign defendant. nMotion's claims against ETC–PZL do not sound in tort, and this Court has not been asked to determine whether Oregon law should apply to nMotion's claims.

Nonetheless, when a foreign defendant takes actions in Oregon that unjustly harm a resident, the state has some interest in redressing the wrong. Oregon's interest is somewhat stronger in this case because ETC–PZL's alleged conduct occurred with the assistance and cooperation of instate residents ETC–Interactive and Pechnick. This factor, therefore, weighs somewhat in favor of exercising jurisdiction over ETC–PZL.

### 5. Most Efficient Judicial Resolution

The evidence and witnesses in this case are widespread. nMotion is located in Oregon, ETC–USA is headquartered in Pennsylvania, and ETC–PZL is located in Poland. ETC–USA also has offices in other states, including Florida, and some of the negotiations in this matter occurred there. Although they are not parties to this litigation, ETC–Interactive and its president, Mark Pechnick, are located in Oregon. They will play significant roles in the discovery and trial of this matter. Because of the numerous Oregon contacts, this factor also weighs in favor of exercising jurisdiction over ETC–PZL.

### 6. Convenience and Effectiveness of Relief for nMotion

As the Ninth Circuit has noted, "no doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference." *Roth,* 942 F.2d at 624. nMotion has brought claims in this Court against ETC–PZL and its parent corporation, ETC–USA. ETC–USA has not challenged this

Court's jurisdiction. Thus, the dismissal of ETC–PZL could require nMotion to litigate two separate actions, one against ETC–USA in Oregon and a separate action against ETC–PZL in another forum. Both actions necessarily would involve proof that ETC–PZL worked on the integration of Pro Pilot into the existing GAT 2 software with the assistance of ETC–Interactive in Oregon. Separate actions would substantially inconvenience nMotion and could result in inconsistent and ineffective outcomes, especially regarding nMotion's request for an order enjoining both Defendants from future use of the Pro Pilot program. Thus, this factor as well weighs in favor of exercising jurisdiction over ETC–PZL.

### 7. Existence of an Alternative Forum

Presumably, Poland offers an alternative forum for nMotion's claims against ETC–PZL. Although ETC–USA is incorporated under the laws of this country, neither party has presented evidence regarding whether Poland would or would not be likely to have jurisdiction over ETC–USA. As such, this factor does not tip the scales in either party's favor.

After considering all of the relevant factors, the Court concludes ETC–PZL has not carried its burden of presenting a compelling case against this Court's exercise of personal jurisdiction over ETC–PZL.

### CONCLUSION

The Court finds, based on the record before it and for the purpose of this motion only, Plaintiff nMotion has made a *prima facie* showing that Defendant ETC–PZL is subject to the specific personal jurisdiction of this Court. This, however, does not end nMotion's burden to establish jurisdiction.

4. The Court concurs that ETC–PZL's Motion would be well taken as to lack of general

nMotion will be required to prove the jurisdictional facts at trial by a preponderance of the evidence. *Data Disc,* 557 F.2d at 1285 n. 2.

For the reasons set forth above, ETC–PZL's Motion to Dismiss (# 18) is **DENIED without prejudice** to the extent it is based on an asserted lack of specific personal jurisdiction.[4]

IT IS SO ORDERED.

personal jurisdiction.